T.C. Memo. 2013-119

UNITED STATES TAX COURT

KELLY A. CUTLER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16840-10L, 1471-11.          Filed May 6, 2013.

Michael L. Deamer, for petitioner.

Inga C. Plucinski, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  In these consolidated cases, petitioner seeks our review,

pursuant to section 6015(e)(1),[1] of respondent's determination that she is not

---

[1]  Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
(continued...)

**[\*2]** entitled to relief from joint and several liability under section 6015(f) with respect to her Federal income tax liabilities for 2002 through 2005.  She also seeks our review, pursuant to section 6330(d)(1), of respondent's determination to sustain a proposed levy action for 2005 and, in connection therewith, alleges that respondent wrongfully seized funds belonging to her children and requests that we order respondent to return the funds.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts, the supplemental stipulation of facts, and the accompanying exhibits are incorporated herein by this reference.  Petitioner resided in Utah at the time she filed the petition.

I.    Background

Petitioner and Curtis Easton Cutler were married on May 22, 1982.  They had eight children together over the course of their nearly 25-year marriage.  Petitioner primarily worked as a homemaker raising and caring for the children.  Mr. Cutler graduated from dental school in 1994 and the following year formed Willow Creek Dental, LLC (Willow Creek Dental).

---

[1](...continued)
Court Rules of Practice and Procedure.

[*3] Willow Creek Dental elected to be taxed as an S corporation for Federal income tax purposes.[2] Mr. Cutler served as its president and was its sole shareholder. During the years in issue Willow Creek Dental operated dental practices in Sandy, Utah (Sandy dental practice), and American Fork, Utah (American Fork dental practice). Willow Creek Dental employed Mr. Cutler as its sole dentist.[3] It also employed two to three dental assistants, an office manager for each location, and a bookkeeper.

Mr. Cutler disliked financial tasks, so much so that he just refused to deal with the dental practices' finances or his personal finances. That task fell upon petitioner. She had completed only one year of college, and she had no formal training in accounting or tax, but she understood that if she did not take care of the finances, the bills would be left unpaid. She used Willow Creek Dental's bank account, to which both she and Mr. Cutler had access, to pay personal and family expenses, and she assisted the bookkeeper with paying the dental practices' expenses. During the four-year period 2002-05 she wrote 23 checks drawn on

_____

[2] "S corporations are passthrough entities that generally do not pay income tax. Rather, the income and losses of S corporations are passed through to their shareholders, who must include the income or losses on their individual income tax returns." Maguire v. Commissioner, T.C. Memo. 2012-160.

[3] He worked at the two locations on alternate days of each week.

[*4] Willow Creek Dental's bank account totaling $58,630.68 to the IRS in partial payment of Mr. Cutler's and her individual income tax liabilities.[4]  Because Mr. Cutler refused to deal with any financial matters, she also handled the preparation of their joint individual income tax return and Willow Creek Dental's corporate tax return for each of the years in issue.

II.    Divorce Proceedings

On October 23, 2006, petitioner and Mr. Cutler ceased living together. Petitioner attributes the decline of the marriage to Mr. Cutler's personal problems. On April 30, 2007, petitioner filed for and was granted a divorce from Mr. Cutler by the Fourth Judicial District Court, Utah County, State of Utah (divorce court), on the grounds of irreconcilable differences.  The divorce court awarded petitioner custody of the children,[5] child support of $2,179 per month, alimony of $1 per year, the Sandy dental practice and the American Fork dental practice, the marital house, two parcels of land, an insurance policy, and personal property.

---

[4]  The payments to the IRS were insufficient to cover the tax liabilities for any of the years in issue.

[5]  Five of petitioner's children were minors at the time.

**[\*5]** III.     The Aftermath of the Divorce

Mr. Cutler had quit working at the dental practices and had moved to his parents' house in California.  He failed to make the court-ordered child support payments.  He left petitioner to fend for herself and their five minor children.  Petitioner sold the American Fork dental practice and the two parcels of land to pay off the practice's outstanding loans and laboratory bills, to get the mortgage loan on her house out of foreclosure, and to pay personal and living expenses.[6]

Petitioner experienced severe financial difficulty after the divorce.  She held onto the Sandy dental practice but struggled to keep it afloat.  Neither she nor the recent dental school graduate she hired in place of Mr. Cutler knew how to run a dental practice.  Her difficulties at work were compounded by having to support five minor children at home by herself.  She accumulated approximately $30,000 in medical bills for the care of the children.  She took out a second mortgage on her house for $40,000 and turned to her church for financial assistance.[7]

---

[6]  The American Fork dental practice was losing money at the time.

[7]  The monthly payment on the second mortgage was $440.

**[*6]**   Through hard work and dedication, petitioner made great strides toward improving her financial situation.[8]  With the help of a consultant, she learned how to run the Sandy dental practice.  By the end of 2010 the practice was generating enough revenue so that petitioner could support herself and her children without financial assistance from her church.  On July 8, 2011, she married Joao Bueno.

IV.    Petitioner's Current Financial Situation

As of April 17, 2012, the date of trial, petitioner was receiving a monthly salary of $1,046 and monthly distributions of profit averaging approximately $5,000 from Willow Creek Dental.  This, according to petitioner, was enough to get by.  Mr. Bueno was paying some household expenses, including utilities and the second mortgage.  However, petitioner was not without financial woes.  After an unsuccessful attempt at working out a loan modification with her bank, the first mortgage loan on petitioner's house was once again in foreclosure.  She had approximately $6,000 of medical bills still outstanding.  Mr. Cutler continued to shirk his child support obligations and owed petitioner approximately $95,000 in past-due child support.

---

[8] Petitioner's compliance with the Federal income tax laws also improved somewhat, but she was still late in filing her tax returns for 2006, 2007, 2008, and 2010.  As of the date of trial, other than for the years at issue she had an outstanding tax liability only for 2007.

[*7] V.     Request for Innocent Spouse Relief

On September 25, 2009, the IRS received from petitioner Form 8857, Request for Innocent Spouse Relief, in which she requested relief from joint and several liability for 2002 through 2005.  She listed her monthly income as $8,049 and her monthly expenses as $8,645 on the Form 8857.  On November 5, 2009, Mr. Cutler submitted to the IRS a completed Form 12508, Questionnaire for Non-Requesting Spouse, objecting to petitioner's request.

The IRS determined on the merits that petitioner was not entitled to relief for 2005, but it held 2002 through 2004 in suspense pending a determination regarding the timeliness of the request.[9]  Petitioner appealed the 2005 determination to the IRS Office of Appeals (Appeals).  On July 8, 2010, the IRS mailed petitioner a final Appeals determination letter in which it determined that petitioner was not entitled to relief for 2005.  Subsequently, the IRS reevaluated petitioner's request for relief for 2002 through 2004 on the merits, and on December 17, 2010, mailed her a final determination letter denying her request for relief.

---

[9]   See infra note 13.

**[*8]** VI.     Request for a Collection Due Process Hearing

On February 17, 2007, the IRS mailed petitioner Letter 1058, Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy), with respect to her unpaid Federal income tax liabilities for 2002 through 2004. Petitioner did not request a collection due process (CDP) hearing. On September 5, 2009, the IRS issued a levy to Bank of American Fork to collect the unpaid Federal income tax liabilities for 2002 through 2004.[10] Bank of American Fork remitted $3,850.24 (levied funds) to the IRS in response to the levy, which was applied to petitioner's income tax liability for 2002.[11]

Also on September 5, 2009, respondent mailed petitioner a notice of intent to levy with respect to her unpaid Federal income tax liability for 2005. On September 21, 2009, petitioner filed Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing request), in which she requested a CDP hearing for 2002 through 2005. She raised two issues in her CDP hearing request: (1) she alleged that the levied funds belonged to her children and

---

[10] Mr. Cutler was listed as the taxpayer on the levy.

[11] The levied funds came from five separate bank accounts. Each account had petitioner's and Mr. Cutler's names on it and the name of one of their children. The children were all minors at the time the accounts were set up. We find that the funds in the accounts belonged exclusively to the children. See infra pp. 25-26.

[*9] requested their return; and (2) she requested innocent spouse relief as a defense to the proposed levy action for 2005. Respondent determined that her CDP hearing request to challenge the levy for 2002 through 2004 was untimely and that she was not entitled to innocent spouse relief for 2005. On July 8, 2010, respondent mailed petitioner a Notice of Determination Concerning Collection Actions(s) Under Section 6320 and/or 6330 sustaining the proposed levy action for 2005.

OPINION

I.    Innocent Spouse Relief

In general, a spouse who files a joint Federal income tax return is jointly and severally liable for the entire tax liability. Sec. 6013(d)(3). However, a spouse may be relieved from joint and several liability under section 6015(f) if: (1) taking into account all the facts and circumstances, it would be inequitable to hold the spouse liable for any unpaid tax; and (2) relief is not available to the spouse under section 6015(b) or (c).[12] The Commissioner has published revenue procedures listing the factors the Commissioner normally considers in determining whether section 6015(f) relief should be granted. See Rev. Proc. 2003-61, 2003-2

---

[12] The parties agree that petitioner is not eligible for relief under sec. 6015(b) or (c).

[*10] C.B. 296, superseding Rev. Proc. 2000-15, 2000-1 C.B. 447. We consider these factors in the light of the attendant facts and circumstances, but we are not bound by them. See Sriram v. Commissioner, T.C. Memo. 2012-91.

In determining whether petitioner is entitled to section 6015(f) relief we apply a de novo standard of review as well as a de novo scope of review. See Porter v. Commissioner, 132 T.C. 203 (2009) (Porter II); Porter v. Commissioner, 130 T.C. 115 (2008) (Porter I). Petitioner bears the burden of proving that she is entitled to relief. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004).

A.    Threshold Conditions for Granting Relief

In order for the Commissioner to determine that a taxpayer is eligible for section 6015(f) relief, the requesting spouse must satisfy the following threshold conditions: (1) she filed a joint return for the taxable year for which she seeks relief; (2) relief is not available to her under section 6015(b) or (c); (3) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (4) the nonrequesting spouse did not transfer disqualified assets to her; (5) she did not file or fail to file the returns with fraudulent intent; and (6) with enumerated exceptions, the income tax liability from which she seeks relief is

[*11] attributable to an item of the nonrequesting spouse.[13] Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298. Respondent has conceded that petitioner has met all of the threshold conditions.[14]

---

[13] Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 296, 297-298, also lists a seventh threshold condition: "The requesting spouse applies for relief no later than two years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse." In Lantz v. Commissioner, 132 T.C. 131 (2009), rev'd, 607 F.3d 479 (7th Cir. 2010), we held that the two-year deadline imposed by sec. 1.6015-5(b)(1), Income Tax Regs., is an invalid interpretation of sec. 6015(f). After the U.S. Court of Appeals for the Seventh Circuit reversed Lantz, we reconsidered the matter but did not change our position. See Hall v. Commissioner, 135 T.C. 374 (2010). In Notice 2011-70, 2011-32 I.R.B. 135, the IRS changed its position and will now consider requests for equitable relief under sec. 6015(f) if the period of limitation on collection of tax provided by sec. 6502 or the period of limitation on credits or refunds provided in sec. 6511 remains open for the tax years at issue.

[14] On brief respondent argues that half of the income from Willow Creek Dental for 2002 through 2005 should be attributed to petitioner and that petitioner therefore does not satisfy the threshold conditions with respect to that income. However, the parties have stipulated that petitioner has met the threshold conditions for relief. Stipulations are generally treated as "conclusive admissions". Rule 91(e). We may disregard stipulations where justice so requires if the evidence contrary to the stipulation is substantial or the stipulation is clearly contrary to the facts disclosed by the record. Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989); see also Loftin & Woodward, Inc. v. United States, 577 F.2d 1206, 1232 (5th Cir. 1978); Jasionowski v. Commissioner, 66 T.C. 312, 317-318 (1976). Such is not the case here. We find that the stipulation is supported by evidence in the record showing that during the years in issue Mr. Cutler was the sole dentist in the American Fork dental practice and the Sandy dental practice and the sole shareholder of Willow Creek Dental.

**[*12]** B.    Circumstances Under Which Relief Is Ordinarily Granted

When the threshold conditions have been met, the Commissioner will ordinarily grant relief with respect to an underpayment of tax if the requesting spouse meets the requirements set forth under Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298.  To qualify for relief under Rev. Proc. 2003-61, sec. 4.02, all of the following elements must be satisfied:  (1) on the date of the request for relief the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief; (2) on the date the requesting spouse signed the return she had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability;[15] and (3) the requesting spouse will suffer economic hardship if relief is not granted.

---

[15] In making the determination whether the requesting spouse had reason to know, consideration is given to, among other things:  (1) the requesting spouse's level of education; (2) the requesting spouse's degree of involvement in the activity generating the income tax liability; (3) the requesting spouse's involvement in business and household financial matters; (4) the requesting spouse's business or financial expertise; and (5) any lavish or unusual expenditures compared with past spending levels.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(C), 2003-2 C.B. at 298.

[*13] Petitioner credibly testified that Mr. Cutler found financial matters unpleasant and just refused to deal with them. She further credibly testified that she "knew perfectly well" that she had to take care of all the financial matters herself, including preparing the tax returns, or they "wouldn't be done". According to petitioner, Mr. Cutler complained to her that they owed tax to the IRS. On the basis of the foregoing, we find that petitioner knew or had reason to know that Mr. Cutler would not pay the tax liabilities for 2002 through 2005. Therefore, she does not qualify for relief under the safe harbor of Rev. Proc. 2003-61, sec. 4.02.

C.    Factors Used To Determine Whether Relief Will Be Granted

Where, as here, a requesting spouse meets the threshold conditions but fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, a determination to grant relief may nevertheless be made under the criteria set forth in Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299. Rev. Proc. 2003-61, sec. 4.03, provides a nonexclusive list of factors the Commissioner will consider in making that determination: (1) whether the requesting spouse is separated or divorced from the nonrequesting spouse (marital status factor); (2) whether the requesting spouse would suffer economic hardship if not granted relief (economic hardship factor); (3) whether, at the time he or she signed the joint return, the requesting spouse

**[*14]** knew or had reason to know that the nonrequesting spouse would not pay the income tax liability (knowledge factor); (4) whether the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement (legal obligation factor); (5) whether the requesting spouse received a significant benefit from the unpaid income tax liability (significant benefit factor); and (6) whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws for the taxable years following the taxable year or years to which the request for relief relates (compliance factor).

The Commissioner considers two other factors that, if present in a case, will weigh in favor of granting relief: (1) whether the nonrequesting spouse abused the requesting spouse (abuse factor); and (2) whether the requesting spouse was in poor mental or physical health at the time he or she signed the return or at the time he or she requested relief (mental or physical health factor). Id. sec. 4.03(2)(b), 2003-2 C.B. at 299. The absence of either factor will not weigh against granting relief. Id.

In making our determination under section 6015(f), we may consider the factors set forth in Rev. Proc. 2003-61, sec. 4.03, and any other relevant factors. No single factor is determinative, and all factors shall be considered and weighed

[*15] appropriately.  See Pullins v. Commissioner, 136 T.C. 432, 448 (2011);

Porter II, 132 T.C. at 214; Haigh v. Commissioner, T.C. Memo. 2009-140.

### 1. Marital Status

Consideration is given to whether the requesting spouse is separated

(whether legally separated or living apart) or divorced from the nonrequesting

spouse.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298.  On October

23, 2006, petitioner and Mr. Cutler ceased living together, and on April 30, 2007,

they were divorced.  Petitioner filed her request for relief on September 25, 2009.

Accordingly, the marital status factor weighs in favor of relief.

### 2. Economic Hardship

Petitioner bears the burden of proving that she will suffer economic

hardship if we do not grant her relief from joint and several liability.  See Rule

142(a); Alt v. Commissioner, 119 T.C. at 311.  A requesting spouse suffers

economic hardship if paying the tax liability would prevent him or her from

paying his or her reasonable basic living expenses.[16]  Alioto v. Commissioner,

---

[16] In determining a reasonable amount for basic living expenses, the Commissioner shall consider information provided by the taxpayer, including:  (1) the taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent; (2) the amount reasonably necessary for food, clothing, housing, utilities, medical expenses, transportation, child support, and other necessities; (3) the cost of living in the geographical area in which the

(continued...)

**[\*16]** T.C. Memo. 2008-185; Butner v. Commissioner, T.C. Memo. 2007-136; sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.; Rev. Proc. 2003-61, sec. 4.02(1)(c), 4.03(2)(a)(ii), 2003-2 C.B. at 298. A hypothetical hardship is insufficient to justify relief. Pullins v. Commissioner, 136 T.C. at 446. Petitioner must demonstrate that imposing joint and several liability is "'inequitable in present terms', Von Kalinowski v. Commissioner, T.C. Memo. 2001-21, and poses a present economic hardship." See id. We have "consistently looked beyond the taxable year at issue to apply subsection (f)", Hall v. Commissioner, 135 T.C. 374, 380 (2010), and we evaluate petitioner's financial situation and prospects as of the time of trial, see Pullins v. Commissioner, 136 T.C. at 446-447.

Petitioner argues that her "economic hardship in this matter is substantial." And, without question, she faced substantial economic hardship following her divorce. The first mortgage loan on her house was in foreclosure, the Sandy dental practice was on the brink of collapse, and she had to turn to her church for financial assistance. With hard work and dedication, she persevered through this

---

[16](...continued)
taxpayer lives; (4) the amount of property available to pay the taxpayer's expenses; (5) any extraordinary expenses, including special education expenses; and (6) any other factor that the taxpayer claims bears on economic hardship and brings to the Commissioner's attention. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

[*17] unusually rough time in her life. However, she remained on shaky financial ground.

On her Form 8857 petitioner reported monthly income of $8,049 and monthly expenses of $8,645. We find that the expenses, which included the mortgage, utilities, food, clothing, insurance, child care, and transportation, were all reasonable basic living expenses for petitioner and her children. Petitioner testified that as of the date of trial, she received a monthly salary of $1,046 and monthly distributions of profit from Willow Creek Dental of approximately $5,000, a total of $6,046 per month. This represented a decrease of $2,003 per month from the amount she reported on Form 8857. She did not provide an accounting of her expenses as of the date of trial, but she did testify that Mr. Bueno helped pay some of the household expenses.[17]

Petitioner testified that during the first quarter of 2012 she was making enough money from the Sandy dental practice "to get by". Nevertheless, her stream of income from the practice was anything but certain. After a failed loan modification attempt, the first mortgage loan on her house was once again in foreclosure. She still had $6,000 of unpaid medical bills. And the financial

---

[17] According to petitioner, Mr. Bueno paid the utilities ($626 per month as reported on Form 8857) and the second mortgage ($440 per month).

[*18] responsibility of raising her minor children rested upon her shoulders, as Mr. Cutler continued to shirk his child support obligations. On the basis of the foregoing, we find that petitioner would have difficulty in paying her reasonable basic living expenses if we do not grant her relief from joint and several liability. Thus, the economic hardship factor weighs in her favor.[18]

### 3. Knowledge

For the reasons previously discussed, petitioner knew or had reason to know that Mr. Cutler would not pay the tax liabilities for the years in issue. See supra p. 13. Accordingly, the knowledge factor weighs against relief.

---

[18] Petitioner and respondent both take the position on brief that the appropriate date to evaluate economic hardship is the date of petitioner's request for innocent spouse relief (i.e., September 25, 2009) and not the date of trial (i.e., April 17, 2012). In Pullins v. Commissioner, 136 T.C. 432, 446-447 (2011), we stated: "When evaluating economic hardship, the Office of Appeals necessarily views the requesting spouse's financial situation as of the hearing date; but we properly consider the evidence presented at the de novo trial, see Porter I, and we consequently evaluate her financial situation and prospects as of that time". Nonetheless, assuming arguendo that we evaluated petitioner's financial situation as of the date of her request for innocent spouse relief, we find, for many of the same reasons, that she would suffer economic hardship if we denied her relief. Mr. Cutler was not paying child support; petitioner was raising her minor children on her own; petitioner's expenses exceeded her income by $596 per month; and petitioner's ability to continue supporting herself and her children from the Sandy dental practice was uncertain.

**[*19]**      4.    Legal Obligation

If the nonrequesting spouse has a legal obligation to pay the outstanding tax liabilities pursuant to a divorce decree or agreement, this factor weighs in favor of relief unless "the requesting spouse knew or had reason to know, when entering into the divorce decree or agreement, that the nonrequesting spouse would not pay the income tax liability." Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv). Where the divorce decree is silent, this factor is neutral. See Drayer v. Commissioner, T.C. Memo. 2010-257; Schultz v. Commissioner, T.C. Memo. 2010-233. Here, the divorce decree did not contain any provision regarding payment of the Federal income tax liabilities. Therefore, this factor is neutral.

      5.    Significant Benefit

This factor weighs against the requesting spouse if she received a significant benefit (beyond normal support) from the unpaid tax liabilities. Rev. Proc. 2003-61, sec. 4.03(a)(v). "A significant benefit is any benefit in excess of normal support." Sec. 1.6015-2(d), Income Tax Regs. A significant benefit may be direct or indirect. Id. "Normal" support is measured by the parties' circumstances. Estate of Krock v. Commissioner, 93 T.C. 672, 678 (1989). Evidence of a significant benefit "may consist of transfers of property or rights to

[*20] property, including transfers that may be received several years" later. Sec. 1.6015-2(d), Income Tax Regs.

Respondent argues that petitioner received a significant benefit from the unpaid tax liabilities because she received in the divorce the two dental practices, the marital house, and the two parcels of land. We disagree. The American Fork dental practice was losing money at the time petitioner received it. Petitioner used part of the proceeds from the sale of the American Fork dental practice to pay off the practice's outstanding debts and laboratory bills. She used the remainder of the proceeds, along with the proceeds from the sale of the two parcels of land, for normal living expenses. The Sandy dental practice would likely have lost much of its value when Mr. Cutler, its sole dentist, quit the practice and moved to California. In fact, petitioner initially struggled to even keep the Sandy dental practice afloat. Only through hard work and dedication was she able to turn it around.

We find that the assets petitioner received in the divorce did not amount to a significant benefit--they were used for normal support, and even then petitioner had to turn to her church for financial assistance. In Butner v. Commissioner, T.C. Memo. 2007-136, we stated that "we consider the lack of significant benefit by the taxpayer seeking relief from joint and several liability as a factor that favors

[*21] granting relief under section 6015(f)." See also Bland v. Commissioner, T.C. Memo. 2011-8; DeMattos v. Commissioner, T.C. Memo. 2010-110. Accordingly, this factor weighs in favor of granting relief.

6.    Compliance

The inquiry under this factor is whether a taxpayer has made a good-faith effort to comply with the Federal income tax laws for the taxable years following the year or years to which the request for relief relates. Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi). Petitioner's request for relief covers the years 2002 through 2005, and thus we examine her compliance for the years after 2005. As of the date of trial, other than for the years at issue petitioner had an outstanding tax liability only for 2007. However, she was late in filing her tax returns for 2006, 2007, 2008, and 2010. While we recognize that she was going through a very difficult time in her life, we cannot say, on the basis of the evidence in the record, that she made a good-faith effort to comply with the tax laws. Therefore, this factor weighs against relief.

7.    Abuse

Abuse by the nonrequesting spouse favors relief. Rev. Proc. 2003-61, sec. 4.03(2)(b)(i). Claims of abuse require substantiation or specificity in allegations. See Knorr v. Commissioner, T.C. Memo. 2004-212. Petitioner did not allege that

[*22] she was abused by Mr. Cutler. Therefore, this factor is neutral. See Rev. Proc. 2003-61, sec. 4.03(2)(b).

### 8. Mental or Physical Health

There is insufficient evidence in the record to support a finding that petitioner was in poor mental or physical health during the years in issue. Petitioner's counsel stated at trial that he did not intend to present evidence on this factor, and petitioner did not argue this factor on brief. This factor is neutral.

### D. Notice 2012-8

On January 5, 2012, the Commissioner issued Notice 2012-8, 2012-4 I.R.B. 309, announcing a proposed revenue procedure updating Rev. Proc. 2003-61, supra. That proposed revenue procedure, if finalized, will revise the factors that the IRS will use to evaluate requests for equitable relief under section 6015(f). In Sriram v. Commissioner, T.C. Memo. 2012-91, slip op. at 9 n.7, we stated that we would "continue to apply the factors in Rev. Proc. 2003-61, 2003-2 C.B. 296, in view of the fact that the proposed revenue procedure is not final and because the comment period under the notice only recently closed." See also Yosinski v. Commissioner, T.C. Memo. 2012-195 (continuing to apply Rev. Proc. 2003-61, supra); Deihl v. Commissioner, T.C. Memo. 2012-176 (same).

**[*23]** The only factor that would change under the proposed revenue procedure is the significant benefit factor. It would change from favorable to neutral, as the evidence shows that neither spouse received a significant benefit from the unpaid tax liabilities. See Notice 2012-8, sec. 4.03(2)(e), 2012-4 I.R.B. at 314. Because the proposed revenue procedure is not yet final and would be less favorable to petitioner, we will continue to apply Rev. Proc. 2003-61, supra.

E.    Balancing the Factors

Three factors weigh in favor of relief (marital status, economic hardship, and significant benefit factors), two factors weigh against relief (knowledge and compliance factors), and three factors are neutral (legal obligation, abuse, and mental or physical health factors). Therefore, on a purely numerical basis, the factors weigh in favor of granting relief. But in addition to the factors, when considering all the relevant facts and circumstances, see Pullins v. Commissioner, 136 T.C. at 448, there is a compelling reason to grant petitioner relief. When Mr. Cutler quit working at the dental practices, moved to California, and left petitioner to support herself and five minor children on her own, she worked hard to get her life back on track. We commend petitioner for her perseverance and believe that she deserves the opportunity to move forward in life without shouldering tax liabilities from her past marriage that are attributable solely to Mr. Cutler's

[*24] income.  Consequently, we conclude that petitioner is entitled to relief from joint and several liability under section 6015(f) for 2002 through 2005.

II.     Collection Review and the Levied Funds

Next we address petitioner's request for review of respondent's determination to proceed with the proposed levy action for 2005.  In her CDP hearing request she alleged that the levied funds belonged to her children and requested their return and she requested innocent spouse relief as a defense to the proposed levy action for 2005.  In her petition she requests that we order respondent to return the levied funds.

A.     Proposed Levy Action for 2005

We have already determined that petitioner is entitled to innocent spouse relief for 2002 through 2005, the effect of which is to relieve her of personal liability for the unpaid tax with respect to those years.  Thus, the issue of the proposed levy action for 2005 is moot.  See Greene-Thapedi v. Commissioner, 126 T.C. 1, 7 (2006) (finding that the proposed levy action was moot because the Commissioner's offset of the taxpayer's overpayment for a later year against her tax account for the determination year had satisfied her unpaid tax liability in full); Gerakios v. Commissioner, T.C. Memo. 2004-203 (dismissing the collection review proceeding as moot because there were no unpaid tax liabilities for the

[*25] determination years upon which a lien or levy could be based after the taxpayer had paid his liabilities in full); Chocallo v. Commissioner, T.C. Memo. 2004-152 (dismissing the collection review proceeding as moot because the Commissioner had acknowledged that the tax liability he had been trying to collect by levy had been improperly assessed, had refunded previously collected amounts with interest, and had agreed that there was no unpaid tax liability upon which a levy could be based). We are left to decide the matter of the levied funds. First we decide to whom they belonged.

### B. Ownership of the Levied Funds

The record establishes that the levied funds came from five separate bank accounts at Bank of American Fork. Petitioner testified that those accounts belonged to her children. She further testified that the funds in those accounts were earned by her children "bit by bit". We find her testimony to be credible. Her son, Cody Cutler, who was an adult at the time of trial, similarly testified that the funds in the accounts belonged to him and his siblings, some of whom were minors at the time of trial. He further testified that the funds in his account were earned from his job. We likewise find his testimony to be credible. On the basis of the foregoing, and there being no evidence to the contrary, we find that

[*26] petitioner did not have any ownership interest in the levied funds--they belonged to her children.

### C. Jurisdiction Over the Levied Funds

Next we must determine whether we have jurisdiction to order respondent to return the levied funds. The Tax Court is a court of limited jurisdiction; we may exercise jurisdiction only to the extent expressly authorized by Congress. Sec. 7442; see also Neely v. Commissioner, 115 T.C. 287, 290-291 (2000); Estate of Forgey v. Commissioner, 115 T.C. 142, 145-146 (2000); Henry Randolph Consulting v. Commissioner, 112 T.C. 1, 4 (1999). Our jurisdiction in these consolidated cases is predicated upon sections 6015(e)(1) and 6330(d)(1). Section 6015(e)(1) gives the Tax Court jurisdiction to determine the appropriate relief available to a taxpayer under section 6015, including credit or refund under section 6015(g). See Washington v. Commissioner, 120 T.C. 137, 153-154 (2003); Rooks v. Commissioner, T.C. Memo. 2004-127. Section 6330(d)(1) gives the Tax Court jurisdiction "to review the determination made by the Appeals Office in connection with the section 6330 hearing." Moser v. Commissioner, T.C. Memo. 2012-208; see also Freije v. Commissioner, 125 T.C. 14, 25 (2005) ("Our jurisdiction under section 6330 covers the 'determination' of the Appeals officer who conducted the hearing requested under that section."). Respondent

[*27] argues that we do not have jurisdiction under either section to grant petitioner the relief she requests regarding the levied funds.  We will examine each section in turn.

1.    Refund or Credit Under Section 6015(g)(1)

Section 6015(g)(1) provides:  "Except as provided in paragraphs (2) and (3), notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section."  However, before any taxpayer may be allowed a refund or credit, there must be a determination that the taxpayer has made an overpayment.  Minihan v. Commissioner, 138 T.C. 1, 8 (2012).  Section 6402(a) makes this expressly clear, stating:

> SEC. 6402(a).  General Rule.--In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect to an internal revenue tax <u>on the part of the person who made the overpayment</u> and shall * * * refund any balance <u>to such person</u>.  [Emphasis added.]

A taxpayer makes an overpayment if he or she remits funds to the Secretary in excess of the tax for which he or she is liable.  Jones v. Liberty Glass Co., 332 U.S. 524, 531 (1947) (defining an overpayment as "any payment in excess of that which is properly due").

**[\*28]** Therefore, even if a taxpayer is relieved from joint and several liability for the tax due on a joint return by application of section 6015(f), the taxpayer is not entitled to a refund under section 6015(g)(1) unless the taxpayer made an overpayment--i.e., "pa[id] more than is owed, for whatever reason or no reason at all." United States v. Dalm, 494 U.S. 596, 610 n.6 (1990); see Ordlock v. Commissioner, 126 T.C. 47, 61 (2006) (holding that a taxpayer entitled to innocent spouse relief was not entitled to a refund of joint tax liabilities paid using community property assets of the marital estate), aff'd, 533 F.3d 1136 (9th Cir. 2008); Kaufman v. Commissioner, T.C. Memo. 2010-89 (declining section 6015 refund when funds were paid by deceased husband's estate); Rosenthal v. Commissioner, T.C. Memo. 2004-89, slip op. at 13 n.6 ("It also must be shown that the payments were not made with the joint return and were not joint payments or payments that the nonrequesting spouse made."). This conclusion is consistent with Rev. Proc. 2003-61, sec. 4.04(2), 2003-2 C.B. at 299, in which the IRS stated: "In a case involving an underpayment of income tax, a requesting spouse is eligible for a refund of separate payments that he or she made after July 22, 1998, if the requesting spouse establishes that he or she provided the funds used to make the payment for which he or she seeks a refund."

[*29] The requirement of Rev. Proc. 2003-61, supra, that a petitioning spouse make a "separate payment" or "provide the funds" used to pay the joint tax liability in order to be entitled to a refund under section 6015(g)(1), is in accord with section 6402, which requires, inter alia, that in order to obtain a refund, a person must make an overpayment. The determination whether a petitioning spouse made a "separate payment" or provided the funds used to make a payment can sometimes be a murky task. See, e.g., Minihan v. Commissioner, 138 T.C. at 11-18 (turning to State law to determine the taxpayer's ownership interest in a joint bank account that the IRS levied upon). But this is not such a case. Petitioner does not argue that she had an interest in the levied funds or that they were provided by her. Quite to the contrary, she argues that the levied funds belonged to her children, and we so found. Consequently, the levied funds are not a payment that she made to the Secretary. Accordingly, we cannot order respondent to return the levied funds to petitioner as a refund or credit under section 6015(g)(1).

## 2. Jurisdiction Under Section 6330

In Greene-Thapedi v. Commissioner, 126 T.C. 1, we held that we do not have jurisdiction under section 6330 to determine an overpayment or to order a refund or credit of tax paid in a collection review proceeding. However, we also

**[*30]** acknowledged that in collection review proceedings commenced pursuant to section 6330

> [t]his Court has exercised its inherent equitable powers to order the Commissioner to return to the taxpayer property that was improperly levied upon, see Chocallo v. Commissioner, T.C. Memo. 2004-152, and to require the Commissioner to provide to the taxpayer a credit with respect to property that the Commissioner had seized pursuant to a jeopardy levy but had improperly refused to sell in compliance with the taxpayer's request made pursuant to sec. 6335(f), see Zapara v. Commissioner, 124 T.C. 223 (2005).[19]

Greene-Thapedi v. Commissioner, 126 T.C. at 9 n.13.  In any event, it would be unnecessary to determine whether we have the inherent equitable powers under section 6330 to order respondent to return the levied funds (i.e., the property that was the subject of the levy for 2002 through 2004) unless petitioner properly commenced a collection review proceeding pursuant to section 6330 for 2002 through 2004.  Respondent argues that petitioner did not.

Respondent admits that petitioner's CDP hearing request was timely for 2005 and that she timely filed a petition with this Court requesting review of his determination to sustain the proposed levy action for 2005.  Respondent argues, however, that petitioner did not timely request a CDP hearing for 2002 through

---

[19] Zapara was later affirmed on appeal.  See Zapara v. Commissioner, 652 F.3d 1042 (9th Cir. 2011), aff'g 124 T.C. 223 (2005).

[*31] 2004 and he did not issue a notice of determination under section 6330 for 2002 through 2004, and therefore we do not have jurisdiction under section 6330 to review the collection action for 2002 through 2004. On the other hand, petitioner argues that we have "jurisdiction to review all CDP appeals". She argues that she requested a CDP hearing within 13 days of the date of the levy to protest the seizure of the levied funds, that her request was denied, and that she timely filed a petition with this Court requesting that we order respondent to return the levied funds. We agree with respondent.

Our jurisdiction under section 6330 depends upon the issuance of a valid determination letter and the filing of a timely petition for review. See sec. 6330(d)(1); Orum v. Commissioner, 123 T.C. 1, 8 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Sarrell v. Commissioner, 117 T.C. 122, 125 (2001); Offiler v. Commissioner, 114 T.C. 492, 498 (2000). On February 17, 2007, respondent mailed petitioner a notice of intent to levy with respect to her unpaid Federal income tax liabilities for 2002 through 2004, in which he notified her of a proposed levy action for 2002 through 2004 and her right to a hearing. However, petitioner did not request a CDP hearing within the 30-day period provided under section 6330(a)(3)(B). Consequently, the IRS proceeded with collection. On September 5, 2009, approximately 2-1/2 years later, the IRS issued a levy to Bank

[*32] of American Fork to collect petitioner's unpaid Federal income tax liabilities for 2002 through 2004. Respondent did not, and was not required to, give petitioner a second notice before the levy took place. See sec. 6330(a)(1).

The letter that respondent mailed to petitioner on September 5, 2009, was a notice of intent to levy with respect to petitioner's unpaid Federal income tax liability for 2005. It notified her of a proposed levy action for 2005 and her right to a hearing. It had nothing to do with the levy for 2002 through 2004 that took place the same day. On September 21, 2009, petitioner requested a CDP hearing for 2002 through 2005. Her CDP hearing request was timely for 2005 because it was made within 30 days of the notice of intent to levy for 2005. See sec. 6330(a)(3)(B). However, it was not timely for 2002 through 2004, as it was made more than 2-1/2 years after the notice of intent to levy for 2002 through 2004. See id.

Petitioner had a CDP hearing for 2005. Following the hearing, respondent issued a determination letter to petitioner sustaining the proposed levy action for 2005, and she timely petitioned this Court for review. However, the determination letter had nothing to do with the collection action for 2002 through 2004. Respondent determined that petitioner's CDP hearing request was untimely for 2002 through 2004. Petitioner did not have a CDP hearing for 2002 through 2004,

**[*33]** and respondent did not issue a determination letter to petitioner for 2002 through 2004. Therefore, we do not have jurisdiction under section 6330 to review the collection action for 2002 through 2004.

### 3. Wrongful Levy

Petitioner seems to argue the merits of a wrongful levy action on behalf of her children.[20] The exclusive remedy of a third party seeking redress against the IRS for levying on his or her property to satisfy the tax liability of another is to bring a wrongful levy action under section 7426. See EC Term of Years Trust v. United States, 550 U.S. 429, 435 (2007); Dahn v. United States, 127 F.3d 1249, 1252-1254 (10th Cir. 1997). However, the District Courts have exclusive jurisdiction to hear wrongful levy actions under section 7426. See sec. 7426(a).

### D. Conclusion

We cannot order respondent to return the levied funds to petitioner (1) under section 6015(g)(1) because they did not belong to her, (2) under section 6330 because we do not have jurisdiction to review the collection action for 2002 through 2004, or (3) under section 7426 because we do not have jurisdiction to hear wrongful levy actions. Petitioner argues that her children could not pursue a

---

[20] We do not address the merits of a wrongful levy action because we do not have jurisdiction to hear such an action.

**[*34]** remedy in Federal court. While we sympathize with her children, we must apply the law as written; it is up to Congress to address questions of fairness and to make improvements to the law. Metzger Trust v. Commissioner, 76 T.C. 42, 59-60 (1981), aff'd, 693 F.2d 459 (5th Cir. 1982).

We hold that petitioner is entitled to innocent spouse relief for 2002 through 2005, that the issue of whether respondent abused his discretion by sustaining the proposed levy for 2005 is moot, and that we cannot order respondent to return the levied funds. We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order and decision will be entered in docket No. 16840-10L.

Decision will be entered for petitioner in docket No. 1471-11.