T.C. Memo. 2018-209

UNITED STATES TAX COURT

DEBRA HEYDON-GRAUSS, Petitioner, AND BRYAN GRAUSS, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10714-17.                          Filed December 20, 2018.

Debra Heydon-Grauss, pro se.

Bryan Grauss, pro se.

<u>Gary R. Shuler, Jr.</u>, and <u>Louis H. Hill</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Debra Heydon-Grauss seeks review of respondent's

determination that she was entitled only to partial relief from joint and several

[*2] liability under section 6015(f)[1] (innocent spouse relief) for 2005, 2007, and 2008 and was not entitled to innocent spouse relief for 2006 and 2009. A notice of determination concerning the request for relief was sent to petitioner on February 13, 2017, for 2005 through 2009, and a timely petition was filed. The petition also included a claim for relief for the abatement of additions to tax for 2010 over which we have jurisdiction under section 6015(e)(1)(A)(i)(II). Bryan Grauss filed a notice of intervention.[2]

FINDINGS OF FACT

The stipulated facts are included by this reference. Petitioner and intervenor were both residents of California when the petition was filed.

During the years at issue petitioner and intervenor were married. Intervenor began living outside the marital home in 2010, and a divorce petition was filed in 2011. Their marriage was dissolved in 2015. They have three children.

---

[1]All section references are to the Internal Revenue Code in effect for the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]If a spouse petitions the Court for sec. 6015 relief, the nonrequesting spouse has a right to intervene in the case under sec. 6015(e)(4). Rule 325; Van Arsdalen v. Commissioner, 123 T.C. 135, 138 (2004). By doing so, the intervenor becomes a party. Tipton v. Commissioner, 127 T.C. 214, 217 (2006).

**[*3]** Since 2004 petitioner has been self-employed as a salesperson of a women's retail and fashion business called Cabi, LLC (Cabi). During 2005 through 2009 intervenor operated Grauss & Co., a recruiting business. During 2010 he operated a direct sales business. Intervenor also received wage income reported on Forms W-2, Wage and Tax Statement, for 2005 through 2009, with Federal income tax withheld.

Petitioner and intervenor filed a delinquent joint return for each year at issue. They filed late for 2005 and 2006 in January 2009; for 2007, 2008, and 2009 in October 2010; and for 2010 in July 2012. They did not remit payment of the tax reported as due on their returns for 2005 through 2009. They remitted full payment of their 2010 reported tax liability with the filing of their 2010 return. Their 2010 unpaid liability at issue here is attributable to amounts due for additions to tax for late filing and failure to timely pay tax.

Petitioner reported income from her Cabi business on Schedule C, Profit or Loss From Business, for each year at issue. She maintained a separate bank account for her business into which she deposited gross receipts and from which she paid expenses incurred in her business (except for tax liabilities). Intervenor was not involved in petitioner's retail sales business. Petitioner maintained financial independence from intervenor with respect to her business. She prepared

[*4] profit and loss statements for her business that the return preparer used to prepare the joint tax returns. Consequently, she was in a better position to know the profitability of her business and its tax obligations than intervenor. In every year at issue except 2008, the net profit of petitioner's business exceeded the net profit generated by intervenor's business. Petitioner's profits generated the tax liabilities in part for 2005 through 2008 and in full for 2009 and 2010. Petitioner had the financial means to pay the tax liabilities with funds held in her business bank account, but she made no attempt to do so.

On Schedules C for 2005, 2006, 2007, 2008, 2009, and 2010 petitioner reported gross receipts from her Cabi business in the respective amounts of $72,513, $112,311, $110,529, $98,985, $82,916, and $92,716. She claimed deductions for expenses in the respective amounts of $8,430, $10,986, $27,031, $30,587, $13,594, and $10,727 for 2005, 2006, 2007, 2008, 2009, and 2010. Finally, she reported net profit in the respective amounts of $52,023, $83,937, $57,398, $49,387, $60,869, and $49,973 for 2005, 2006, 2007, 2008, 2009, and 2010. For 2009 petitioner also reported gross receipts of $10,258 from Stella and Dot, a retail sales business, on a separate Schedule C. This business realized net profit of $7,146 for 2009. Petitioner made no effort to pay the tax liabilities, including self-employment tax, generated by her earnings.

[*5]  During 2007 petitioner received a taxable early distribution from a qualified retirement plan of $24,019.  She did not have tax withheld on this distribution.  Petitioner had various stocks and bonds held by Charles Schwab in her own name.  She realized capital gain from the sale of assets held in the Charles Schwab account for 2010.

The income from intervenor's recruiting business was also reported on Schedules C for 2005 through 2009.  However, the Schedules C mistakenly listed petitioner as the owner of the business.  For 2005, 2006, 2007, 2008, and 2009 intervenor's business reported gross receipts in the respective amounts of $82,680, $19,739, $10,500, $115,625, and zero.  He reported expenses in the respective amounts of $35,648, $9,974, $4,849, $20,828, and $2,913 for 2005, 2006, 2007, 2008, and 2009 and reported net profit/loss in the respective amounts of $47,032, $4,890, $5,651, $94,797, and negative $2,913.  For 2010 intervenor reported gross receipts of $5,252 from a Schedule C business of direct sales and claimed deductions for expenses of $11,221, resulting in a net loss of $5,969.

Petitioner was not involved in intervenor's businesses during 2005 through 2010.  Petitioner and intervenor jointly opened the bank account intervenor used in his business.  They also maintained a joint bank account from which they paid household expenses.

**[*6]** Petitioner and intervenor consistently failed to pay the tax shown on their returns. Petitioner knew the joint tax returns were not being filed timely for all the years at issue. They filed their 2005 and 2006 joint returns late in January 2009. Petitioner did not learn that the tax due was not paid with the return filings until the IRS began collection actions in March 2010. Their 2007, 2008, and 2009 joint returns were not filed until October 2010 when petitioner became aware of their failure to pay for prior years. The 2010 tax return was not filed until July 2012. Thus, petitioner also knew of the underpayments at the time of the 2010 return's filing.

By July 2012 petitioner knew that intervenor had insufficient funds to pay the tax liability as he transferred the marital home to her because of his financial problems. In addition, the Internal Revenue Service (IRS) had undertaken collection actions for past due tax obligations from intervenor's default on an installment agreement, including levying on a bank account. Petitioner and intervenor were in serious credit card debt when the delinquent returns were filed. They were living beyond their means.

After the returns were filed and the unpaid tax shown on the returns was assessed, the IRS began collection actions resulting in intervenor's making numerous payments. Intervenor paid the 2006 liability, including interest and

**[*7]** additions to tax, in full; the 2005 tax liability was satisfied, but interest and additions to tax remained unpaid for 2005. Partial payments were made for other years.

By judgment filed on July 27, 2017, the Superior Court of California, County of Contra Costa, ordered petitioner to pay intervenor $19,690.50, reimbursing him for half of the amount that he paid towards their debt to the IRS. Specifically, intervenor made payments to the IRS toward their tax liabilities as follows: $6,106.50 in 2016, $16,962.50 in 2015, $5,428 in 2014, $1,600 in 2013, $4,400 in 2012, and $4,884 paid beginning in 2011 through 2014. Petitioner did not pay any amount on their joint tax liabilities.

On October 21, 2015, respondent received from petitioner Form 8857, Request for Innocent Spouse Relief, with various attachments. On Form 8857, petitioner requested innocent spouse relief for 2005, 2006, 2007, 2008, 2009, and 2010. Respondent issued preliminary determinations to petitioner for 2005, 2006, 2007, 2008, and 2009, denying her request for innocent spouse relief under section 6015(f) in full. Respondent sent a letter to petitioner stating that he was considering her Form 8857 for 2010 as a request for abatement of penalties. Petitioner replied to the letter and provided various documents.

[*8] On April 22, 2016, petitioner submitted to respondent Form 12509, Statement of Disagreement, with attachments. Subsequently, petitioner submitted Form 843, Claim for Refund and Request for Abatement, dated May 2, 2016, requesting abatement of penalties for 2010.

On February 13, 2017, the Office of Appeals issued petitioner a final Appeals determination for 2005, 2006, 2007, 2008 and 2009, allowing partial relief under section 6015(f) for 2005, 2007, and 2008. For 2005, 2007, and 2008, respondent allowed petitioner partial relief for tax liabilities of $6,562, $2,617, and $16,186, respectively, and denied relief for $7,706, $20,093, and $6,578, respectively. For each year of these years he also allowed relief from the proportionate amounts of additions to tax and interest associated with the partial relief from tax liability granted. He denied relief for the liabilities associated with petitioner's income and deductions.

For 2006 and 2009 respondent denied relief in full. With respect to 2006 respondent denied petitioner relief under section 6015(f) because intervenor had paid the tax, additions to tax, and interest in full and no liability remained to be collected. For 2009 respondent denied relief under section 6015(f) because the unpaid tax was attributable to her own income.

**[\*9]**  On October 24, 2017, the IRS informed petitioner that it was denying her request to abate the additions to tax for 2010 because she did not establish a sufficient reason for her failure to timely file or pay tax.

The marriage in this case was obviously not a happy one in the later years before the Court, but there is no evidence of physical abuse by intervenor. Intervenor admits to drug use and alcohol abuse.  Neither petitioner nor intervenor made estimated tax payments on his or her Schedule C business during 2005 through 2009.  They also had a very large credit card balance by the end of their marriage and used their income to maintain their lifestyles.

## OPINION

A taxpayer may request relief from joint and several liability on a joint return under section 6015(b), (c), or (f).  Under section 6015(b) and (c), relief is available only from an "understatement" of tax, i.e., a proposed or assessed deficiency.  Section 6015(b) and (c) does not authorize relief from an "underpayment" of tax reported on a joint return.  Section 6015(f) allows relief from an understatement or an underpayment.

Petitioner filed joint income tax returns with her spouse, but they failed to remit full payment of the tax shown thereon for 2005 through 2009.  As this case involves underpayments for 2005, 2006, 2007, 2008, and 2009, petitioner is not

**[*10]** eligible for relief under section 6015(b) or (c).  If the requesting spouse is not eligible for relief under either subsection (b) or (c), the spouse may be eligible for equitable relief under subsection (f).

Section 6015(f) provides a requesting spouse may be relieved of joint liability if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for any unpaid tax or deficiency or any portion thereof.  See sec. 1.6015-4(a), Income Tax Regs.  Section 6015(f) authorizes granting such equitable relief "under procedures prescribed by the Secretary."  The standards followed by respondent in determining equitable relief under section 6015(f) are found in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296.  The requirements for relief under Rev. Proc. 2013-34, supra, are categorized into a three-step procedure:  threshold conditions, streamlined conditions, and equitable factors.  To qualify for innocent spouse relief, a requesting spouse must meet all of the threshold conditions.  Id. sec. 4.01, 2013-43 I.R.B. at 399.  Then, if those conditions are met, the IRS will consider whether the requesting spouse can receive relief under a streamlined determination.  Id. sec. 4.02, 2013-43 I.R.B. at 400.  If the requesting spouse is not granted relief through the streamlined determination, the IRS will consider whether the requesting spouse should

[*11] nevertheless be granted relief under the equitable factors.  Id. sec. 4.03, 2013-43 I.R.B. at 400.

The Tax Court reviews claims for relief under section 6015(f) using a de novo standard and scope of review.  Porter v. Commissioner, 132 T.C. 203, 210 (2009).  This Court may consider the IRS guidelines, but is not bound by them, in evaluating the facts and circumstances of a case.  Molinet v. Commissioner, T.C. Memo. 2014-109, at *6; see Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).  Except as otherwise provided in section 6015, the taxpayer requesting section 6015 relief bears the burden of proof .  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

Petitioner seeks innocent spouse relief for 2005 through 2009.  Intervenor fully paid the tax liabilities for 2005 and 2006, but additions to tax and interest remain unpaid for 2005.  Petitioner seeks a refund of the amounts paid by intervenor.  She did not pay these liabilities herself; thus even if she were entitled to innocent spouse relief for 2006 (which she is not), a refund of tax that she did not pay is not permissible.  See Cutler v. Commissioner, T.C. Memo 2013-119; see also Rev. Proc. 2013-34, sec. 4.04, 2013-43 I.R.B. at 403.

To be eligible for section 6015(f) relief, the requesting spouse must satisfy the following seven threshold conditions (threshold test):  (1) the taxpayers filed a

**[*12]** joint return, (2) relief is not available under section 6015(b) or (c), (3) the claim for relief is timely, (4) no assets were transferred between spouses as part of a fraudulent scheme, (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse, (6) the requesting spouse did not knowingly participate in filing a fraudulent joint return, and (7) the income tax liability is attributable, in full or in part, to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income.  Rev. Proc. 2013-34, sec. 4.01.

The record establishes that the first six conditions are met, so we focus only on the seventh.  Where an underpayment is attributable in full or in part to the requesting spouse, the IRS will nevertheless consider granting relief if any of the following exceptions applies:  (1) attribution due solely to the operation of community property law; (2) nominal ownership; (3) misappropriation of funds; (4) abuse; or (5) fraud committed by the nonrequesting spouse.  Id. sec. 4.01(7). Where the tax liability is attributable to both spouses, the IRS will grant relief only for the portion of the tax liability attributable to the nonrequesting spouse and not for the portion attributable to the requesting spouse unless an exception applies. Id.  For tax fully attributable to a requesting spouse, the IRS will grant relief only if an exception applies.  Id.

[*13] For each of 2005, 2007, and 2008, a portion of the underpayment is attributable to intervenor's income. Respondent concedes that petitioner satisfies the threshold test for these three years for the tax attributable to intervenor's income and has granted relief for the portions of the liabilities attributable to his income. Respondent did not grant relief for the liabilities attributable to petitioner's income. Petitioner is generally not eligible for innocent spouse relief on the tax attributable to her income-producing activities. See Ellison v. Commissioner, T.C. Memo. 2004-57. In such a case she would not meet the threshold test. See Holliman v. Commissioner, T.C. Memo. 2015-157, at *8-*9. For 2009 and 2010 petitioner failed to establish that any of either underpayment is attributable to intervenor; the underpayments are solely attributable to petitioner's income. Accordingly, she cannot satisfy the seventh condition of the threshold test.

Where the liability is attributable to the requesting spouse, she may be entitled to relief if an exception applies that could entitle her to relief for tax on her own income. Abuse is one such exception. In her request for innocent spouse relief, in her petition, and at trial, petitioner alleges that she was abused by intervenor and thus she should be relieved of liability for tax attributable to her own income for each year. To satisfy the abuse exception to the seventh condition

**[\*14]** of the threshold test, the requesting spouse must establish that as a result of abuse she was unable to question the payment of the tax due on a return for fear of retaliation from the nonrequesting spouse. Rev. Proc. 2013-34, sec. 4.01(7)(d). Abuse includes efforts to control, isolate, humiliate, and intimidate the requesting spouse or to undermine her ability to reason independently. Id. sec. 4.03(2)(c)(iv), 2013-43 I.R.B. at 402. Such allegations should not be treated lightly, but the Court should not accept a taxpayer's uncorroborated abuse claims at face value. See, e.g., Pullins v. Commissioner, 136 T.C. at 454; Johnson v. Commissioner, T.C. Memo. 2014-240.

Although excessive use of drugs or alcohol could lead to abuse, petitioner did not provide specific testimony supporting a pattern of abuse. Specifically, she testified that there was "abuse in the household. There was alcohol. There were drugs. There were gambling. There were sexual affairs. There was mismanagement of money. Risky investments. Gambling." She also testified that "[t]here was a lot of anger and yelling in the household." She testified that documents from the domestic relations court indicated that intervenor abused the children. Specifically, she testified that intervenor "had supervised visits" of the children and the court documents "reference the alcohol and drug testing". Intervenor specifically denied physical abuse of petitioner and his children. We

[*15] found his testimony in this regard to be credible. Petitioner's testimony and the stipulated exhibits fall short of the substantiation needed to sustain an abuse allegation.

Accordingly, petitioner does not meet the requirements for innocent spouse relief for the tax liabilities on her own income and is not entitled to relief for the tax liability attributable to her own income for any year at issue. She fails to qualify for an exception to the threshold conditions for 2009 and 2010 where the underpayments are attributable solely to her income. In addition, she does not qualify for an exception to the threshold test for the tax attributable to her own income for 2005, 2007, and 2008.[3] She is entitled to innocent spouse relief for 2005, 2007, and 2008 to the extent respondent allowed in his final Appeals determination.

---

[3]As petitioner does not satisfy any of the exceptions to the threshold condition relating to her own income, we do not address the streamlined determination or equitable factors. Respondent conceded that petitioner would qualify for the streamlined determination for all years except 2010 except to the extent the tax is attributable to her own income.

**[*16]** In reaching our holdings herein, we have considered all arguments the parties made, and, to the extent we did not mention them above, we conclude they are moot, irrelevant, or without merit.  To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.