T.C. Memo. 2014-240

UNITED STATES TAX COURT

LINDSAY M. JOHNSON, Petitioner, AND JOSHUA T. HART, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6664-13.                          Filed November 25, 2014.

Lindsay M. Johnson, pro se.

Joshua T. Hart, pro se.

<u>Sharyn M. Ortega</u>, for respondent.

[*2]     MEMORANDUM FINDINGS OF FACT AND OPINION[1]

DAWSON, Judge:  By final notice of determination dated December 21, 2012, respondent denied petitioner's claim for relief from joint and several liability under section 6015(f)[2] with regard to the underpayment of Federal income tax for 2007.  Petitioner timely filed a petition with this Court for review of respondent's determination.  Thereafter, petitioner's former spouse, Joshua T. Hart (intervenor), timely filed a notice to intervene pursuant to Rule 325(b) to oppose any relief to petitioner under section 6015.

---

[1]This case was tried before Judge Diane L. Kroupa on March 17, 2014.  As ordered by the Court, respondent filed a seriatim opening brief on June 16, 2014.  On June 16, 2014, Judge Kroupa retired from the Tax Court.  On June 18, 2014, the Court issued an order informing the parties of Judge Kroupa's retirement and proposing to reassign this case to another judicial officer of the Court for purposes of preparing the opinion and entering the decision on the basis of the trial record or, alternatively, allowing the parties to request a new trial.  On July 14, 2014, respondent filed a response consenting to the reassignment of this case; neither petitioner nor intervenor filed a response regarding the reassignment.  As ordered by the Court, petitioner's answering seriatim brief was due July 15, 2014.  She did not file a brief.  While we could hold petitioner in default and dismiss this case, see Rule 123(a), Tax Court Rules of Practice and Procedure, under these circumstances we decline to do so.  On August 27, 2014, the Court issued an order assigning this case to Judge Howard A. Dawson, Jr.

[2]All section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]**  The only issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f) for the underpayment of income tax plus statutory additions to tax and underpayment interest for 2007. We hold that petitioner is not.

FINDINGS OF FACT[3]

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in California when she filed the petition.

Petitioner's Dental Practice

Petitioner holds a doctor of dental surgery degree. She acquired her dental practice, Stonebrook Dental Care, on or about October 22, 2002. She operated the dental practice as a sole proprietor and managed the finances along with an accountant. Petitioner managed the dental practice for five years before selling it on or about October 15, 2007. It was the sale of this dental practice that resulted in most of the tax due in this case.

---

[3]Because of the reassignment of this case for purposes of preparing the opinion and entering the decision, we had no opportunity to observe the demeanor of the witnesses, namely, petitioner and intervenor. Thus, we make no inferences of credibility.

**[*4]** <u>Marriage and Subsequent Divorce</u>

Petitioner and intervenor were married on April 10, 2003.  They have one child.  During 2007 intervenor worked for Wells Fargo & Co.  Petitioner and intervenor separated on July 28, 2008.  Their divorce became final on September 9, 2010.  Petitioner and intervenor signed their divorce agreement, which provides in pertinent part:

> Wife shall be responsible for one half of the 2007 Federal tax obligation and will contact the Internal Revenue Service upon executing this Agreement to establish a repayment plan.
>
> Husband shall be responsible for one half of the 2007 Federal tax obligation and upon executing this Agreement will pay $25,000 for his share of the tax obligation and $4,000 plus penalties and interest owing for his share of the current $59,000 tax debt.

Petitioner's counsel drafted the divorce agreement.  Intervenor was not represented by counsel.

<u>Joint 2007 Federal Tax Return</u>

Petitioner and intervenor timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2007,[4] reporting the following income:  (1) total wages of $155,802, arising from intervenor's employment with Wells Fargo & Co.;

---

[4]Both petitioner and intervenor willingly signed the Form 8879, IRS e-file Signature Authorization, for 2007.  A certified public accountant prepared their return.

**[*5]** (2) taxable interest of $169, earned on a jointly held account; (3) income of $24,007 reported on Schedule C, Profit or Loss From Income, arising from petitioner's dental practice; (4) capital gain of $203,236, all resulting from the sale of petitioner's dental practice; (5) other gains of $44,076 from the sale of business property related to petitioner's dental practice; and (6) distributions reported on Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., and totaling $32,050 from three separate accounts held solely in petitioner's name. They reported total tax due of $83,942 and Federal income tax withholding from intervenor's wages of $28,213, resulting in a total amount due of $58,123 (which included an estimated tax penalty of $2,394). Petitioner and intervenor understood that they owed the amount due but did not remit payment when they filed their 2007 return.

Petitioner and intervenor experienced both marital and financial difficulties. They discussed the reported but unpaid 2007 Federal income tax liability.

2007 Income Tax Debt and Subsequent Returns

Petitioner and intervenor filed a joint 2008 Form 1040 in which refund credits of $1,500 and $14,798 were applied against their outstanding 2007 tax liability.

**[\*6]**  Petitioner separately filed a 2009 Form 1040 in which she applied a $418 credit against the outstanding 2007 tax liability.

On June 14, 2010, intervenor signed a $25,000 check payable to the U.S. Treasury and sent it to the Internal Revenue Service to be applied toward payment of his share of the 2007 tax liability.

Between October 2010 and February 2011 petitioner made four payments of $300 and one payment of $255 toward the outstanding 2007 tax liability.

At the time of trial a levy of $300 every two weeks had been imposed on intervenor's wages.  The first payment was on February 8, 2013.  As of February 10, 2014, intervenor's levy resulted in payment of $8,100 toward the outstanding 2007 tax liability.

As of February 10, 2014, the outstanding balance due for the 2007 tax liability was approximately $25,500.

Petitioner's Health

Petitioner was diagnosed with bipolar I disorder.  She was hospitalized in June 2006 for approximately seven days and subsequently in August 2008 for approximately five days.  She returned to work in June 2009.  Petitioner successfully managed her bipolar disorder with medication.  She has not been hospitalized for this disorder since 2008.

**[*7]** Petitioner's Request for Innocent Spouse Relief

On November 23, 2011, petitioner filed Form 8857, Request for Innocent Spouse Relief, requesting relief from joint and several liability under section 6015(f) for the 2007 unpaid liability. On her Form 8857 she stated that she was not a victim of spousal abuse or domestic violence. Petitioner attached to the Form 8857 three documents: a personal statement; a letter from her physician; and a copy of the divorce agreement. On the Form 8857 petitioner did not report any monthly wage income but listed her assets as approximately $1,000 cash on hand and reported that she had received funds from a section 401(k) plan as part of the divorce settlement. Petitioner did not provide a dollar amount for these funds.

Petitioner's Financial Condition

On the Form 8857 petitioner reported that she was receiving $3,600 in monthly income from California's State Disability Insurance Program and $1,250 in monthly child support from intervenor. In addition, petitioner had: (1) a rollover individual retirement account (IRA) with Union Bank with an $89,000 fair market value and (2) a Roth IRA with Vanguard Fiduciary Trust with a fair market value of $5,000. Petitioner made this contribution in 2011.

Petitioner has held part- or full-time employment since the end of 2011. She earned a total of $18,991 in 2011 from her dentistry work; her 2011 monthly

**[*8]** expenses were $4,885. In 2012 petitioner earned $67,896 from her dentistry work. In both 2012 and 2013 she received monthly child support payments of approximately $460 from intervenor. At the end of 2012 petitioner's rollover IRA had a $93,000 fair market value, and her Roth IRA had a $5,300 fair market value. Petitioner's February 2014 Schwab money market fund account statement reflected a $45,000 balance.

As of mid-2013 petitioner had reestablished a private dental practice in Roseville, California (operating as Nothing But Wisdom Teeth).

With the exception of 2007, petitioner is current with her individual Federal income tax filings and payment obligations. Petitioner received tax refunds of $2,083 for 2010, $7,034 for 2011, and $4,757 for 2012.

Preliminary and Final Determinations

In September 2012 the Internal Revenue Service issued a preliminary determination denying petitioner section 6015(f) relief. Petitioner appealed the IRS' preliminary determination to the IRS Office of Appeals (Appeals Office). In a Letter 3279C, Final Appeals Determination, dated December 21, 2012, the Appeals Office upheld the IRS' determination, denying petitioner's request for section 6015(f) relief. Petitioner timely filed a petition in this Court.

**[\*9]** Intervenor's Request for Innocent Spouse Relief

On August 1, 2013, intervenor filed a Form 8857 requesting relief under section 6015(f) for the unpaid liability for 2007. He stated in part as follows:

> A payment plan was established with the IRS for payment of the taxes when the 2007 Form 1040 was filed. Upon the finalization of our divorce in 2010, the divorce decree * * * clearly states that each party was responsible for one half of the remaining taxes owed for 2007. I have since paid in full my share of the 2007 tax debt.

> [Our] divorce decree clearly states that each of us was responsible for one half of the remaining tax liability from 2007. I have paid my half in full at this time. My former spouse set up a payment plan with the IRS for her share of the tax debt and began making payments towards her share of the debt. My former spouse has since fallen behind on her payment plan. This has caused my wages to be garnished. I would like to be relieved of this tax liability at this time so that I will not be subject to future unexpected wage garnishments.

OPINION

I. Statutory Framework

Pursuant to section 6013(a), a married taxpayer may generally elect to file a joint Federal income tax return. After making the election, each spouse is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3). A spouse seeking relief from joint and several liability may follow procedures established in section 6015. If the disputed liability involves nonpayment of taxes shown on a joint return, the only relief available is under section 6015(f). See

**[\*10]** <u>Washington v. Commissioner</u>, 120 T.C. 137, 146-147 (2003). Pursuant to section 6015(f), the Commissioner is authorized to grant equitable relief from joint and several liability if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)".

This Court applies a de novo scope and standard of review to a taxpayer's request for innocent spouse relief. <u>Porter v. Commissioner</u>, 132 T.C. 203, 210 (2009). The requesting spouse bears the burden of proof with respect to relief under section 6015(f). <u>Id.</u> (citing Rule 142(a)).

## II. <u>Threshold Conditions Under Rev. Proc. 2013-34, 2013-43 I.R.B. 397</u>

The Commissioner has prescribed guidelines to determine whether a taxpayer qualifies for equitable relief from joint and several liability. These guidelines are enunciated in Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399-403, <u>modifying and superseding</u> Rev. Proc. 2003-61, 2003-2 C.B. 296. <u>See, e.g.</u>, <u>Reilly-Casey v. Commissioner</u>, T.C. Memo. 2013-292. This Court considers these guidelines in the light of the attendant facts and circumstances to decide whether equitable relief is appropriate under section 6015(f), but the Court is not bound by them. <u>See</u> <u>Pullins v. Commissioner</u>, 136 T.C. 432, 438-439 (2011); <u>Sriram v. Commissioner</u>, T.C. Memo. 2012-91. The guidelines begin by establishing

**[\*11]** threshold conditions set forth in Rev. Proc. 2013-34, sec. 4.01, 2013-43

I.R.B. at 399-400, that must be satisfied before the Commissioner will consider a

request for section 6015(f) equitable relief.  The threshold requirements, stated in

the conjunctive, are:  (1) the requesting spouse filed a joint return for the year for

which relief is sought; (2) relief is not available to the requesting spouse under

section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were

transferred between the spouses as part of a fraudulent scheme; (5) the

nonrequesting spouse did not transfer disqualified assets to the requesting spouse;

(6) the requesting spouse did not knowingly participate in the filing of a fraudulent

joint return; and (7) absent certain exceptions, the income tax liability from which

the requesting spouse seeks relief is attributable, either in full or in part, to an item

of the nonrequesting spouse.

Respondent concedes that the first six conditions have been met.  We

therefore address only the seventh condition, namely, whether the income tax

liability from which relief is sought is attributable to an underpayment resulting

from the nonrequesting spouse's income, unless a specified exception applies.  See

Rev. Proc. 2013-34, sec. 4.01(7).

The primary consideration herein, and the basis of the negative

determination, is that petitioner generated the income from her dental practice and

[*12] none of it is attributable to intervenor. Petitioner's tax liability is attributable to her self-employment income and from the capital gain and other gain resulting from the sale of her dental practice. As explained below, petitioner has not proved that any exception to meeting this threshold condition applies.

For the seventh condition, the Commissioner may still consider granting relief regardless of whether the underpayment is attributable to the requesting spouse if any of the following exceptions applies: (1) attribution solely due to operation of community property law; (2) nominal ownership; (3) misappropriation of funds; (4) abuse; or (5) fraud committed by the nonrequesting spouse. Id.

The dental practice was solely petitioner's. Intervenor was then a full-time Wells Fargo wage earner. Thus, exceptions (1) and (2) do not apply here. Petitioner has not asserted or demonstrated that intervenor misappropriated funds or acted fraudulently. Therefore, exceptions (3) and (5) also do not apply. Petitioner points us only to the remaining exception--abuse.

Rev. Proc. 2013-34, sec. 4.03(2)(c)(iv), 2013-43 I.R.B. at 402, states that "[a]buse comes in many forms and can include physical, psychological, sexual, or emotional abuse, including efforts to control, isolate, humiliate, and intimidate the requesting spouse, or to undermine the requesting spouse's ability to reason

[*13] independently and be able to do what is required under the tax laws."

Claims of abuse require corroborating evidence or specificity in allegations. See, e.g., Deihl v. Commissioner, T.C. Memo. 2012-176. We take all facts and circumstances into account in determining the presence of abuse. Rev. Proc. 2013-34, sec. 4.01. A requesting spouse must establish: (1) that she was the victim of abuse before the return was filed, and (2) that, as a result of the prior abuse, she was not able to challenge the treatment of any items on the return or was not able to question the payment of any balance due reported on the return, for fear of the nonrequesting spouse's retaliation. Id. sec. 4.01(7)(d).

Petitioner has not established, and the record does not support, that she was a victim of abuse before the return was filed and that, as a result of any such abuse, she was not able to challenge the treatment of any items on the return or was not able to question the payment of any balance due reported on the return for fear of intervenor's retaliation. On her 2011 request for innocent spouse relief petitioner indicated that she was not the victim of spousal abuse or domestic violence at any relevant time. Yet, once her claim was denied, it was not until she filed her March 21, 2013, petition in this Court that she indicated that she was "involved in an emotionally abusive marriage". At trial petitioner mentioned two alleged incidences that she considered abusive, but she did not give any specific details.

[*14] She did not call any witnesses or provide any documentation to support her claims of abuse. There is no evidence in the record that petitioner filed a report concerning abuse or that she raised the issue of abuse in any prior legal proceedings with intervenor. Thus, we conclude that petitioner failed to carry her burden of proving that she was abused for section 6015(f) purposes or that any such abuse affected her ability to challenge or question the handling of the joint 2007 income tax return. See, e.g., Wang v. Commissioner, T.C. Memo. 2014-206. Petitioner did not overcome her failure to meet the attribution factor. Accordingly, we hold that petitioner does not satisfy the seventh threshold condition of Rev. Proc. 2013-34, sec. 4.01, and is therefore ineligible to request section 6015(f) relief.

Nonetheless, even assuming petitioner has met the threshold conditions for relief, she must then demonstrate that equitable relief is appropriate under certain factors. See id. secs. 4.02 and 4.03, 2013-43 I.R.B. at 400. If the requesting spouse then satisfies the so-called streamlined conditions under Rev. Proc. 2013-34, sec. 4.02, relief may be granted. If, however, relief is not available under Rev. Proc. 2013-34, sec. 4.02, then the Commissioner will look to the facts and circumstances as set forth in Rev. Proc. 2013-34, sec. 4.03, to determine whether relief from joint and several liability is available to the requesting spouse.

**[\*15]** III.  <u>Streamlined Determination Granting Relief</u>

Rev. Proc. 2013-34, sec. 4.02, sets forth elements that a requesting spouse must satisfy to qualify for a streamlined determination under section 6015(f) as follows:  (1) on the date the IRS makes its determination, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) on the date the joint return was filed, the requesting spouse did not know or have reason to know that the nonrequesting spouse would not or could not pay the underpayment of tax reported on the joint return.  Although petitioner finalized her divorce from intervenor in September 2010 and meets the first criterion, she fails to meet the other two.  Petitioner must satisfy all three.

A requesting spouse will suffer economic hardship when payment of part of all of the liability will prevent her from meeting her reasonable basic living expenses.  Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401.  A requesting spouse's future ability to earn may also be a consideration.  <u>Pullins v. Commissioner</u>, 136 T.C. at 446-447.  A hardship cannot be hypothetical; the requesting spouse must introduce evidence to support her claim, analyzed as of the date of trial, that she would suffer economic hardship.  <u>Id.</u>  There is no economic hardship where, although the taxpayer is unable to pay the liability all at once, she

**[*16]** is able to meet her reasonable basic living expenses while making periodic payments. See, e.g., O'Neil v. Commissioner, T.C. Memo. 2012-339.

On the basis of the record before us, we conclude that payment of the tax due (in whole or part) would not be an economic hardship for petitioner. As of the trial date she was working as a dentist and shared custody of her child with intervenor. In addition to the $68,000 of income she earned in 2012 and payments she received from intervenor, she had a $45,000 money market account and IRAs.

The outstanding balance due for petitioner and intervenor's 2007 tax year was approximately $25,500 as of February 27, 2014. From the evidence before us, petitioner has not proved that she would suffer economic hardship if section 6015(f) relief were not granted.

Where a tax liability is properly reported but not paid, a requesting spouse who at the time of filing knew or had reason to know that the nonrequesting spouse would not or could not pay the tax liability fails to meet the third prong of Rev. Proc. 2013-34, sec. 4.02. In determining whether a requesting spouse had reason to know the tax would not be paid, several factors are considered, including the requesting spouse's level of education, involvement in the activity that produced the tax liability, involvement in the household financial affairs, and financial

[*17] expertise, as well as other factors.  See, e.g., Stephenson v. Commissioner, T.C. Memo. 2011-16.

Petitioner had reason to know as well as actual knowledge that intervenor would not pay her portion of the tax liability due.  She knew when she signed the return that the couple was having financial difficulties, that there was an amount due on the 2007 return, that no payment was made at the time the return was filed, and that intervenor was not going to pay that amount.  Petitioner is a well-educated individual who operated a dental practice as a sole practitioner for five years and who knew that the sale of her dental practice triggered most of their 2007 tax liability.  Moreover, there is no evidence of intervenor's deceit or evasiveness regarding the filing of the 2007 tax return or the nonpayment of the amount due.

In some instances abuse may be a mitigating factor as to knowledge or reason to know.  As stated above, petitioner has not established that she was the victim of spousal abuse or that intervenor controlled the household financial affairs and limited her access to them.  Petitioner has failed to show that she was a victim of abuse for section 6015(f) purposes.  The abuse exception is unavailable to petitioner as a means of mitigating the fact that she had actual knowledge that intervenor could not and would not pay the understatement of tax.  In sum,

**[*18]** petitioner is not entitled to relief from joint and several liability under the so-called streamlined provisions of Rev. Proc. 2013-34, sec. 4.02.

IV.  Facts and Circumstances Analysis

Where a requesting spouse meets all seven threshold conditions but does not qualify for a streamlined determination, she may nevertheless be granted relief if, taking into account all the facts and circumstances, it would be inequitable to hold her liable for the underpayments.  Rev. Proc. 2013-34, sec. 4.03, provides a list of these nonexclusive factors, including:  (1) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse would suffer economic hardship if relief is not granted; (3) in underpayment cases whether, on the date the return was filed or the requesting spouse believed it was filed, the requesting spouse did not have knowledge or reason to know that the nonrequesting spouse would not or could not pay the tax liability at that time or within a reasonable period of time after filing the return; (4) whether the nonrequesting spouse or the requesting spouse has a legal obligation to pay the tax liability pursuant to a decree of divorce or other agreement; (5) whether the requesting spouse received a significant benefit from the item giving rise to the deficiency; (6) whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws for the taxable years following the

[*19] taxable year to which the request for relief relates; and (7) whether the requesting spouse was in poor mental or physical health at the time she signed the return or requested relief. In making our determination under section 6015(f), we consider these factors as well as any other relevant factors. No single factor is determinative, and all factors are considered and weighed appropriately. See Pullins v. Commissioner, 136 T.C. at 448.

First, petitioner and intervenor were divorced before she filed her request for innocent spouse relief. This factor weighs in favor of granting relief. Second, petitioner had sufficient liquid assets to pay the balance on the tax liability, and she would not suffer economic hardship by doing so. This factor weighs against granting relief. Third, petitioner had actual knowledge of the underpayment and that intervenor would or could not pay the tax due. This factor weighs against relief because it was unreasonable for petitioner to believe that intervenor would or could pay the tax liability due. Fourth, pursuant to the divorce agreement, petitioner was legally obligated to pay half of the 2007 income tax liability due. The intervenor has paid more than his portion. This factor weighs against relief. Fifth, the record does not indicate that petitioner benefited beyond normal support from the unpaid tax. This factor favors relief. Sixth, petitioner has been in substantial compliance with the tax laws since 2007, the year at issue. This factor

[*20] favors relief. Seventh, as previously explained, petitioner has failed to establish that her medical condition affected her at the time the 2007 income tax return was filed in September 2008 or at the time she submitted her request for innocent spouse relief. According to petitioner's physician, petitioner's condition had stabilized following her hospitalization, and she has managed the illness with medication. Petitioner testified that she had no residual effects of her illness after she separated from intervenor, and she was able to return to work in 2009 and beyond. This factor is neutral. Finally, there is no evidence that intervenor rigidly controlled the household finances or denied petitioner access to financial records. This factor weighs against relief.

After considering and weighing all the factors, we find that the equities do not weigh in petitioner's favor. As the preceding discussion shows, there are factors that weigh in favor of and against relief and one factor is neutral. Our decision whether relief is appropriate, however, is not based on a simple tally of those factors. See, e.g., Hudgins v. Commissioner, T.C. Memo. 2012-260, at *39-*40. Rather, our decision is heavily influenced by the unique circumstances in this case. Accordingly, we hold that petitioner is not entitled to relief from joint and several liability for 2007 under section 6015(f).

**[*21]** We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, and without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.