T.C. Memo. 2017-109

UNITED STATES TAX COURT

NELLY MENCIAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4293-15.                                    Filed June 8, 2017.

<u>Jennifer Correa Riera</u>, <u>Joseph A. DiRuzzo, III</u>, <u>Paul C. Shuman</u>, and

<u>Christopher J. Rajotte</u>, for petitioner.

<u>Brian A. Pfeifer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  Petitioner seeks review under section 6015(e)(1)[1] of

respondent's determination that she is not entitled to relief from joint and several

_____

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect at all relevant times.  Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] liability for taxable year 2009 with respect to a balance due of $9,446 that was reported on a Form 1040X, Amended U.S. Individual Income Tax Return (amended return), that she filed with her former spouse, Efrain Cesar Ramirez.

The issue for decision is whether petitioner is entitled to equitable relief from joint and several liability under section 6015(f).

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Florida at the time her petition was timely filed. Originally from Honduras, petitioner has lived in the United States since 1989. She has a high school education from Honduras. She is a housekeeper, and in 2009, the year at issue, she earned income for housekeeping services.

Petitioner and Mr. Ramirez married on October 5, 1984. They separated in January 2010 and divorced in September 2012. In the process, they entered into a marital settlement agreement (agreement) dated May 14, 2012. According to their agreement, Mr. Ramirez would be responsible for "any and all debts * * * to the Internal Revenue Service for any year(s) prior to 2012 (year of divorce)." The agreement recognized that Mr. Ramirez' income was not stable, he was in arrears for child support, and the mortgage on the marital home was in foreclosure. In

[*3] addition, it recognized that the bank accounts were not equitably distributed at the time petitioner and Mr. Ramirez separated. Specifically, Mr. Ramirez kept a certificate of deposit worth $5,000 and a bank account with a balance of $2,300. The agreement also stated that Mr. Ramirez said these accounts had been depleted. The agreement provided that Mr. Ramirez would pay a $2,000 debt to a mutual friend (in $100-per-month installments). Finally, the agreement stated that petitioner was represented by counsel and Mr. Ramirez was advised to seek counsel but chose to represent himself.

Throughout their marriage petitioner and Mr. Ramirez filed joint Federal income tax returns. For 2009 Mr. Ramirez filed a joint Form 1040, U.S. Individual Income Tax Return (original return), prepared by Tri Stars Multiservice Corp. (Tri Stars). Petitioner was aware that the original return had been filed, but she was not shown the return before it was filed and did not sign it. Nonetheless the parties stipulated that this was a joint return. The original return claimed an overpayment of $9,913, resulting, among other things, from claiming petitioner's nephew as a dependent, claiming a loss deduction on Schedule C, Profit or Loss From Business, for Mr. Ramirez, failing to report petitioner's Schedule C income of $16,970, and claiming an increased child tax credit and an increased earned income credit. On or about March 22, 2010, the refund was sent via direct deposit

[*4] to a bank account (ending in 2425) controlled by Mr. Ramirez.  Petitioner did not receive any of the refund.

In October 2011 petitioner and Mr. Ramirez were informed that Tri Stars was being investigated by the Internal Revenue Service (IRS) Criminal Investigation Division.  The investigation culminated in a permanent injunction barring Tri Stars from preparing tax returns.[2]  On April 30, 2012, petitioner and Mr. Ramirez filed the amended return.  They did not claim petitioner's nephew as a dependent, reduced the child tax credit and earned income credit claimed, eliminated Mr. Ramirez' Schedule C loss deduction, and included petitioner's Schedule C income of $16,970 for housekeeping services.[3]  As a consequence, they reported a total tax liability of $2,895 on the amended return, composed of an income tax liability of $497 and a self-employment tax liability of $2,398, which were attributable to petitioner's Schedule C income, and a total balance due of $9,446.  The increase of $6,551 over the total tax liability reported on the amended

---

[2] See United States v. Rodriguez, No. 13-20425-CIV-Altonaga/Simonton (S.D. Fla. Mar. 11, 2013) (permanent injunction entered).  At trial we took judicial notice of the permanent injunction.

[3] An amount equal to petitioner's income was reported on the Schedule C attached to the original return, but that Schedule C listed a principal business or profession of "Werehouse" attributable to Mr. Ramirez, and the income reported on the Schedule C was offset by losses.

[*5] return was attributable to the $9,913 refund that Mr. Ramirez had already received. Attached to the amended return was a Form 9465, Installment Agreement Request, proposing payments of $100 per month to be withdrawn from the same bank account (ending in 2425) designated to receive the refund claimed on the original return. A handwritten note on the amended return stated: "Please accept my refund from the 2011 Form 1040 as partial payment ($1237). Thanks." Respondent's records reflect that Mr. Ramirez' 2011 tax overpayment of $1,237 was applied against the balance due on May 14, 2012. Respondent's records also show that on April 8, 2013, petitioner's 2012 tax overpayment of $5,061 was applied against the $9,446 balance due for 2009 and that additional overpayments due to Mr. Ramirez for 2012, 2013, and 2014 were applied to offset the remainder of that balance. On January 23, 2014, respondent received petitioner's Form 8857, Request for Innocent Spouse Relief.

In her opening posttrial brief petitioner conceded the tax liability reported on the amended return that was attributable to her income, namely, the $2,895, and argued that she should not be liable for the remaining $6,551--the amount attributable solely to the refund paid to Mr. Ramirez. Specifically, petitioner stated that she "understands that she is liable for tax owed on earnings she generated as a housekeeper" and asked us to "order the Service to refund any

**[*6]** funds held in excess of tax due as a result of * * * [her] 2009 earnings (with attendant statutory interest)."

## OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse generally is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3); see Porter v. Commissioner, 132 T.C. 203, 206 (2009). In certain circumstances, a spouse may seek relief from joint and several liability under procedures set forth in section 6015. If the requesting spouse does not otherwise qualify for relief, the requesting spouse may seek equitable relief under section 6015(f) if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency". Sec. 1.6015-4(a), Income Tax Regs. Because this case involves failure to pay tax shown on a return, rather than a deficiency, petitioner may be eligible for relief under section 6015(f) only. See Washington v. Commissioner, 120 T.C. 137, 146-147 (2003).

This Court has jurisdiction to review respondent's denial of petitioner's request for equitable relief under section 6015(f). See sec. 6015(e)(1). In doing so, we apply a de novo standard of review, as well as a de novo scope of review. Porter v. Commissioner, 132 T.C. at 210. Petitioner bears the burden of proving

**[\*7]** that she is entitled to relief under section 6015(f). See Rule 142(a); see also Porter v. Commissioner, 132 T.C. at 210.

The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f) from joint and several liability. We consult these procedures when reviewing the Commissioner's denial of relief, but we are not bound by them as our analysis and determination ultimately turn on an evaluation of all the facts and circumstances. Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Molinet v. Commissioner, T.C. Memo. 2014-109; Sriram v. Commissioner, T.C. Memo. 2012-91.

Petitioner argues that we should not apply these procedures, because, among other things, the regulation incorporating them, section 1.6015-4, Income Tax Regs. (incorporating Rev. Proc. 2000-15, 2000-1 C.B. 447, superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296, superseded by Rev. Proc. 2013-34, 2013-43 I.R.B. 397), is invalid. We need not reach petitioner's arguments regarding the validity of the regulation or our consultation of the revenue procedure because, as we explain below, we conclude that petitioner is entitled to the relief that she seeks. Therefore, the outcome would not change. See, e.g., Carlson v. Commissioner, 112 T.C. 240, 246 (1999); Rose v. Commissioner, T.C. Memo.

[*8] 1995-75, 1995 WL 63648. Of course in those cases we reached our conclusions without resorting to the regulation at issue whereas here we do consult the revenue procedure that petitioner asks us to ignore. See Carlson v. Commissioner, 112 T.C. at 246; Rose v. Commissioner, 1995 WL 63648, at *2. But whether or not the revenue procedure is incorporated expressly into section 1.6015-4, Income Tax Regs., the weight we give it does not change: We do not treat it as binding.

The revenue procedures set forth seven threshold conditions that a spouse must meet to qualify for relief under section 6015(f): (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399. The record establishes that petitioner satisfies the first

[*9] six conditions, and respondent raised only the seventh condition in his answering brief. We therefore will focus on the seventh condition.

Our analysis of this condition turns on how we read "tax liability". The tax liability reported on the amended return is attributable to petitioner's income from housekeeping services. But that accounts for only $2,895 of the total balance due of $9,446, leaving $6,551. And as noted above, petitioner conceded the liability attributable to her income. Petitioner credibly testified that she did not benefit from the refund Mr. Ramirez received and that Mr. Ramirez, not petitioner, wrongfully reported income and claimed deductions on the original return (reporting an amount equal to her income on a Schedule C for himself, claiming an offsetting loss deduction and an erroneous dependency exemption deduction, and reporting no Schedule C income for her). See Kellam v. Commissioner, T.C. Memo. 2013-186. We therefore conclude that the $6,551 remaining at issue before us arises only from the refund Mr. Ramirez obtained through his wrongful reporting of their income and claiming of deductions. Because we find that she was not involved in this wrongful reporting and it was this wrongful reporting that gave rise to the underpayment, we also reject respondent's argument that the underpayment reported on the amended return resulted from overstated credits and overstated exemptions attributable to petitioner. Therefore, as to the $6,551

**[*10]** remaining at issue, we conclude that petitioner satisfies the threshold conditions.

When the threshold conditions have been met, the guidelines allow a requesting spouse to qualify for a streamlined determination of relief under section 6015(f) if all of the following conditions are met: (1) the requesting spouse is divorced from the nonrequesting spouse, is legally separated from the nonrequesting spouse under State law, is a widow or widower and is not an heir to the nonrequesting spouse's estate that would have sufficient assets to pay the tax liability, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date the IRS makes its determination; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) in an underpayment case such as this, the requesting spouse had no knowledge or reason to know when the return was filed that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return. Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400. While we consider petitioner's economic circumstances below as part of our facts and circumstances analysis, she failed to offer specific evidence as to economic hardship; we therefore conclude that she does not meet the streamlined conditions. See Hollimon v. Commissioner, T.C. Memo. 2015-157, at *9-*10.

**[*11]**  Where a requesting spouse meets the threshold conditions but fails to qualify for relief under the guidelines for a streamlined determination, the requesting spouse still may be eligible for equitable relief if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the underpayment.  See Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400.  The following are nonexclusive factors that the Commissioner takes into account when determining whether to grant equitable relief:  (1) marital status; (2) economic hardship; (3) in the case of an underpayment, knowledge or reason to know that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return; (4) legal obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health.  Id., 2013-43 I.R.B. at 400-403.

In our overall facts and circumstances analysis, we focus on the following factors.  First, we consider petitioner's marital status.  This factor weighs in favor of relief if the requesting spouse is no longer married to the nonrequesting spouse (or was not a member of the same household for the 12-month period ending on the date the Commissioner issued his determination).  Id. sec. 4.03(2)(a).  Petitioner and Mr. Ramirez separated in 2010 and divorced in 2012, years before respondent's determination was issued.  Therefore this factor favors relief.

[*12] We also consider whether petitioner will suffer economic hardship if relief is not granted. See id. sec. 4.03(2)(b). A requesting spouse suffers economic hardship if the satisfaction of the tax liability, in whole or in part, would cause her to be unable to pay reasonable basic living expenses. Id. Petitioner bears the burden of proving that she will suffer economic hardship if we do not grant her relief from joint and several liability. See Rule 142(a); Johnson v. Commissioner, T.C. Memo. 2014-240 at *15-*16 (explaining that hardship cannot be hypothetical, that the requesting spouse must introduce evidence to support the claim, and that regular income along with savings available to the requesting spouse support the conclusion that there is no economic hardship). Petitioner offered no evidence as to her current economic position, other than her testimony that she is a housekeeper. We conclude that this factor is neutral.

The third factor we consider is whether petitioner knew that Mr. Ramirez would not or could not pay the liability. See Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 402-403. The Form 9465 attached to the amended return designated the same account for withdrawal of installment payments of the balance due as was designated to receive the refund on the original return. And a handwritten note on the amended return asked that Mr. Ramirez' overpayment for 2011 be applied toward the balance due. However, respondent directs us to the

[*13] provisions in the marital settlement agreement regarding Mr. Ramirez' lack of stable income and statement that he had depleted the certificate of deposit and the bank account he received at the time of separation. Given the magnitude of the balance owed, we must view this factor as weighing slightly against relief.

Fourth, we consider whether petitioner or Mr. Ramirez had a legal obligation to pay the outstanding balance due. See Rev. Proc. 2013-34, sec. 4.03(2)(d); see also, e.g., Molinet v. Commissioner, at *13 (finding the fact that the consent final judgment of dissolution of marriage signed by both parties which imposed the obligation to pay tax liability on nonrequesting spouse weighed in favor of relief). This factor is neutral, however, if the requesting spouse knew or had reason to know when entering into the agreement that the nonrequesting spouse would not pay. Rev. Proc. 2013-34, sec. 4.03(2)(d). The marital settlement agreement expressly imposes that obligation on Mr. Ramirez but does note (as we discuss above) that his income was not stable. Given our conclusion above we are constrained to conclude that this factor is neutral.

Fifth, we consider whether petitioner benefited significantly from the unpaid tax liability or understatement. See Rev. Proc. 2013-34, sec. 4.03(2)(e), 2013-43 I.R.B. at 402. We are convinced by petitioner's testimony that Mr. Ramirez received the entire $9,913 refund that gave rise to the $9,446 balance due

**[\*14]** on the amended return and the fact that he kept the certificate of deposit and the bank account in the marital settlement agreement that she did not benefit from the unpaid liability. Therefore, we conclude that this factor also weighs in favor of relief. <u>See, e.g.</u>, <u>Hollimon v. Commissioner</u>, at \*13-\*14 (fact that taxpayer received little or no benefit weighed in favor of relief); <u>Molinet v. Commissioner</u>, at \*13-\*14 (finding that use of funds by nonrequesting spouse weighed in favor of relief).

The other factors were not addressed on the record; therefore we will treat them as neutral.

On balance we believe that the two factors favoring relief--the fact that petitioner and Mr. Ramirez were divorced and the fact that she received none of the refund he improperly claimed on the original return, of which he was the sole beneficiary--outweigh the factor weighing against relief--namely, whether she knew or had reason to know he could not pay the balance due. And we conclude that requiring petitioner in effect to return to the Government the refund that Mr. Ramirez improperly received would be inequitable considering all of the facts and circumstances before us.

[*15]  On the basis of our examination of the record before us and the parties' arguments, we find that petitioner is entitled to relief under section 6015(f) for the $6,551 attributable to Mr. Ramirez for 2009.

Because petitioner's 2012 overpayment, $5,061, exceeds the amount of her liability conceded above, $2,895, petitioner may be entitled to a refund under section 6015(g)(1) to the extent not otherwise prohibited under section 6511 (and other sections not relevant to this case).  See Washington v. Commissioner, 120 T.C. 137 (applying section 6015(f) to provide equitable relief and granting refund subject to limitations in section 6511).  Section 6511(a) requires that a claim for credit or refund of an overpayment of any tax in respect of which the taxpayer is required to file a return be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever period expires later.

We have no difficulty concluding here that petitioner filed a timely refund claim.  In Washington v. Commissioner, 120 T.C. at 161-162, the Commissioner urged us to consider the date of the taxpayer's claim for relief as the date of the taxpayer's claim for refund and conceded that the taxpayer was entitled to a refund of amounts paid or applied within the two-year period preceding that date.  We rejected that date in favor of an even earlier date.  Petitioner filed Form 8857 on or before January 23, 2014 (the date respondent received it).  That date is less than

**[\*16]** two years after the date her overpayment for 2012 was applied to satisfy the liability at issue here, April 8, 2013.  (And under section 6513(a) that overpayment was deemed made on the last day for paying her 2012 tax liability, which was April 15, 2013.)  Therefore we need not consider whether petitioner made an earlier claim, and we hold that she is entitled to a refund of the difference between the amount of her overpayment, $5,061, and the amount of her conceded liability, $2,895.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered under</u>

<u>Rule 155</u>.