# United States Tax Court

T.C. Memo. 2024-56

KIRAN RAWAT,
Petitioner,
AND RAGHVENDRA SINGH,
Intervenor

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 11350-18.                    Filed May 13, 2024.

————————

Kiran Rawat, pro se.

Raghvendra Singh, pro se.

*Sharyn M. Ortega* and *Brian A. Pfeifer*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, *Judge*: By a final determination dated May 8, 2018, respondent determined that petitioner was not entitled to innocent spouse relief pursuant to section 6015(b), (c), or (f)[1] for taxable years 1998–2002 and 2008–14. Petitioner timely petitioned for redetermination of respondent's decision on June 8, 2018. Petitioner's husband intervened to support petitioner's claim for relief.

The Court granted respondent's Motion to Dismiss for Lack of Jurisdiction for 2008–09 and 2011–14. The Court also granted

———————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] respondent's Motion for Partial Summary Judgment for 1998–2002 and 2010 in which respondent moved for summary adjudication that petitioner is (1) ineligible for relief pursuant to section 6015 on the ground of res judicata for 1998, 1999, 2001, and 2002, (2) ineligible for relief pursuant to section 6015 for 2000 because she did not file a joint return for that year, and (3) ineligible for relief pursuant to section 6015(b) or (c) for 2010 because her claim was not filed timely. The only issue remaining for decision is whether petitioner is entitled to equitable relief from joint and several liability for 2010 under section 6015(f).

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The First Stipulation of Facts and the attached Exhibits are incorporated herein by this reference. Petitioner resided in California when the Petition was timely filed.

Petitioner and intervenor were married in 1996. They were legally separated under the law of California as of January 1, 2000. Petitioner and intervenor untimely filed a joint return for 2010 in June 2011. At that time they had a case pending in this Court covering their taxable years 1997–2002, for which respondent had determined deficiencies. Petitioner had received the notice of deficiency for those years.

On May 18, 2012, respondent issued to petitioner and intervenor a notice of deficiency for 2008–10. The deficiency for 2010 resulted primarily from the following adjustments: $345,032 of unreported cancellation of indebtedness income reported to petitioner on Form 1099–A, Acquisition or Abandonment of Secured Property; disallowed expense deductions of $182,256 from Schedule C, Profit or Loss From Business; $35,452 of unreported long-term capital gain; and $26,064 of intervenor's unreported retirement income.

Petitioner and intervenor untimely filed with the Court a Petition to redetermine the 2010 deficiency. The Court accordingly dismissed the case for lack of jurisdiction.

Petitioner and intervenor continued to file joint returns each year through 2018.

Petitioner and intervenor have joint outstanding balances due for federal income tax for 2001, 2002, 2012, 2013, and 2014.

**[*3]**    Petitioner received her nursing license in 1997.  Before 2000 she worked for various nursing facilities as an employee and as a contractor through intervenor's nurse staffing agency.  In 2000 petitioner began nursing work as an employee for a hospital.  In the three years preceding trial, petitioner earned taxable wages of $114,446, $89,467, and $115,914.  Petitioner's annual income at the time of trial is unknown because she did not provide any pay stubs beyond December 2018.  From 2015 to 2020 petitioner made contributions totaling $140,224 to her employer-sponsored retirement plan.

Petitioner and intervenor at various times managed numerous rental properties.  Petitioner was at least the nominal owner of these properties.  In 2017 the California Court of Appeal for the Third District affirmed a trial court's decision finding petitioner and intervenor liable for violations of state tenancy law in a suit brought by one of their tenants.  In that case the trial court found by clear and convincing evidence that petitioner "owned, managed and controlled the subject property" and that she "ratified and approved the . . . conduct of defendant [intervenor Raghvendra] Singh" with respect to the rental property in question.  That court ordered certain of petitioner's properties to be placed into receivership for disposition to satisfy the couple's creditors.  For 2018 petitioner received Forms 1098, Mortgage Interest Statement, relating to three of those properties.  Petitioner owned at least one of the properties as of June 4, 2021.  The record is otherwise unclear as to the actual number and value of the properties that had been placed into receivership or that petitioner continued to own as of the time of trial.

On August 31, 2017, respondent received from petitioner Form 8857, Request for Innocent Spouse Relief, seeking relief from the 2010 liability.  On her Form 8857, petitioner failed to disclose her ownership of any real property or retirement accounts in the space provided to disclose her assets.

In the final determination denying relief, respondent determined that petitioner was ineligible for relief pursuant to section 6015(b) or (c) for 2010 because her claim was untimely.  Respondent further found that she did not qualify for equitable relief under section 6015(f) because a portion of the deficiency is attributable to her and under the circumstances it was not unfair to hold her jointly liable for the deficiency.

**[\*4]**                                     OPINION

I.      *Relief Under Section 6015(f)*

Generally, married taxpayers may elect to file a joint federal income tax return.  § 6013(a).  If a joint return is made, each spouse is generally jointly and severally liable for the entire tax due on their aggregate income for that year.  § 6013(d)(3).  Under section 6015(a) a spouse may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability according to provisions set forth in section 6015(c).  If a taxpayer does not qualify for relief under section 6015(b) or (c), the taxpayer may seek equitable relief under section 6015(f).  § 6015(f)(1)(B); *Porter v. Commissioner*, 132 T.C. 203, 206 (2009).  We held petitioner is not entitled to relief under subsections (b) and or (c) for 2010 in granting respondent's aforementioned Motion for Partial Summary Judgment with respect to that year.

Under section 6015(f) the Secretary may grant equitable relief to a requesting spouse if, considering all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for any unpaid tax or deficiency.  In determining whether a taxpayer is entitled to relief under section 6015(f) for petitions filed before July 1, 2019, the Court applies a de novo standard and scope of review.  *Porter*, 132 T.C. at 210; *cf. Sutherland v. Commissioner*, 155 T.C. 95, 104 (2020) (holding that section 6015(e)(7) does not apply to petitions filed before July 1, 2019).  Petitioner bears the burden of proving that she is entitled to equitable relief under section 6015(f).  *See* Rule 142(a); *Porter*, 132 T.C. at 210.

The Commissioner has specified the procedures governing equitable relief in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, *modifying and superseding* Rev. Proc. 2003-61, 2003-2 C.B. 296.  Although we are not bound by Rev. Proc. 2013-34, and our determination ultimately rests on an evaluation of all the facts and circumstances, we analyze petitioner's request under the guidelines set forth therein to ascertain whether she is eligible for relief.  *See Pullins v. Commissioner*, 136 T.C. 432, 438–39 (2011); *Johnson v. Commissioner*, T.C. Memo. 2014-240, at \*10.

Rev. Proc. 2013-34 provides a three-step analysis for Internal Revenue Service (IRS) personnel to follow in evaluating requests for relief.  Section 4.01 lists seven threshold conditions that must be met before the IRS will grant any relief.  Rev. Proc. 2013-34, § 4.01, 2013-43 I.R.B. at 399.  Section 4.02 lists circumstances in which the IRS will make a streamlined determination granting equitable relief.  *Id.* § 4.02,

[*5] 2013-43 I.R.B. at 400. For taxpayers not eligible for a streamlined determination, section 4.03 prescribes a list of nonexclusive factors that the IRS will consider in determining whether equitable relief should be granted. *Id.* § 4.03, 2013-43 I.R.B. at 400–03. Respondent concedes that petitioner meets the seven threshold conditions.

### A. *Streamlined Determination*

A streamlined determination granting equitable relief under section 6015(f) is available if the requesting spouse can establish that he or she (1) is no longer married to the nonrequesting spouse, (2) would suffer economic hardship if relief were not granted, and (3) lacked knowledge or reason to know of the understatement at the time the return at issue was signed. Rev. Proc. 2013-34, § 4.02. As discussed below, petitioner does not satisfy the economic hardship condition and is therefore not eligible for a streamlined determination of equitable relief.

Economic hardship exists "if satisfaction of the tax liability in whole or in part will cause the requesting spouse to be unable to pay reasonable basic living expenses." *Id.* § 4.03(2)(b), 2013-43 I.R.B. at 401. The requesting spouse "must demonstrate that imposing joint and several liability is 'inequitable in present terms' . . . and poses a present economic hardship." *Pullins*, 136 T.C. at 446 (quoting *Von Kalinowski v. Commissioner*, T.C. Memo. 2001-21, slip op. at 20). We have "consistently looked beyond the taxable year at issue to apply subsection (f)." *Hall v. Commissioner*, 135 T.C. 374, 380 (2010). We therefore evaluate the requesting spouse's financial situation and prospects as of the time of trial. *See Pullins*, 136 T.C. at 446–47.

A requesting spouse can demonstrate economic hardship by showing that his or her (1) annual income is below 250% of the federal poverty guidelines,[2] or (2) monthly income exceeds his or her reasonable basic monthly living expenses by $300 or less. Rev. Proc. 2013-34, § 4.03(2)(b). To demonstrate economic hardship, the requesting spouse must also show that he or she does not have assets from which he or she could make payments toward the tax liability and still meet reasonable

---

[2] The federal poverty guidelines are updated periodically in the Federal Register by the U.S. Department of Health and Human Services (HHS) under the authority of 42 U.S.C. § 9902(2). In February 2021 HHS published new guidelines which set the federal poverty line for a one-person household at $12,880 and for a three-person household at $21,960. Annual Update of the HHS Poverty Guidelines, 86 Fed. Reg. 7732, 7733 (Feb. 1, 2021).

[*6] basic living expenses. *Id.* If she fails to satisfy either requirement, then the Commissioner "will consider all facts and circumstances (including the size of the requesting spouse's household) in determining whether the requesting spouse would suffer economic hardship if relief is not granted." *Id.*

Petitioner would not suffer economic hardship if denied relief from the 2010 liability. For a household of three, 250% of the applicable federal poverty guidelines is $54,900 of annual income. In the three years preceding trial, petitioner earned in excess of $100,000 in two of the years and nearly $100,000 in the other. While the record does not establish her annual income at the time of trial, she did not allege that she could not meet her reasonable basic living expenses if relief is not granted. Additionally, petitioner's substantial contributions to her employer-sponsored retirement plan further suggest that she has sufficient assets to avoid economic hardship if relief is not granted.

Petitioner testified that all of the properties that she and intervenor once managed had been placed into receivership but did not provide evidence to corroborate her testimony. Petitioner received three Forms 1098 for 2018 detailing the amount of mortgage interest she paid relating to those properties. Considering her receipt of the Forms 1098, the lack of evidence in the record to the contrary, and her lack of candor on the matter, we find that petitioner still owns and controls real property other than her residence. Under these circumstances it is clear that petitioner would not suffer economic hardship if denied relief. Petitioner is accordingly not entitled to a streamlined determination of equitable relief from the 2010 liability.

B.   *Equitable Factors*

Rev. Proc. 2013-34 establishes the following seven nonexclusive factors to be considered in determining whether equitable relief under section 6015(f) should be granted: (1) the current marital status of the spouses; (2) whether the requesting spouse will suffer economic hardship if relief is not granted; (3) whether the requesting spouse knew or had reason to know of the item giving rise to the understatement; (4) whether either spouse has a legal obligation to pay the outstanding liability; (5) whether the requesting spouse significantly benefited from the understatement; (6) whether the requesting spouse has made a good faith effort to comply with income tax laws in the years following the year for which relief is sought; and (7) whether the requesting spouse was in poor mental or physical health when the return at issue was filed,

**[\*7]** when the request for relief was made, or at the time of trial. Rev. Proc. 2013-34, § 4.03(2), 2013-43 I.R.B. at 400–03; *see also Pullins*, 136 T.C. at 448.

In making a determination under section 6015(f), the Court considers the enumerated factors as well as any other relevant facts. No single factor is dispositive, and "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and circumstances." Rev. Proc. 2013-34, § 4.03(2); *see Pullins*, 136 T.C. at 448. We discuss the factors that are most relevant to this case.

1.     *Economic Hardship*

We have found that petitioner would not suffer economic hardship if denied relief from the 2010 liability. This factor is accordingly neutral. Rev. Proc. 2013-34, § 4.03(2)(b).

2.     *Knowledge or Reason to Know*

In understatement cases, such as this one, this factor weighs in favor of relief if the requesting spouse did not know or have reason to know of the item giving rise to the understatement as of the date the return was filed. *Id.* § 4.03(2)(c)(i)(A), 2013-43 I.R.B. at 401. This factor weighs against relief if the requesting spouse knew or had reason to know of the item. *Id.* A taxpayer who signs a return is generally charged with constructive knowledge of its contents. *Porter*, 132 T.C. at 211–12.

Although not controlling, we find that the regulations applicable to knowledge under section 6015(b) and (c) provide a useful framework for the analysis under section 6015(f). *See Jacobsen v. Commissioner*, T.C. Memo. 2018-115, at \*30–31 (applying the knowledge analysis under section 6015(b) to the section 6015(f) analysis). Whether a requesting spouse has actual knowledge of an erroneous item is determined upon all facts and circumstances. Treas. Reg. § 1.6015-3(c)(2)(iv).

A requesting spouse has reason to know of an understatement if, considering all the facts and circumstances, a reasonable person in similar circumstances would have known of the understatement. Treas. Reg. § 1.6015-2(c). A requesting spouse has constructive knowledge of an understatement if he or she knows facts sufficient to place him or her on notice of a possible understatement and fails to inquire. *Price v. Commissioner*, 887 F.2d 959, 965 (9th Cir. 1989). Factors considered in making this determination include the requesting spouse's level of

[*8] education and/or business expertise, deceit or evasiveness by the nonrequesting spouse, the requesting spouse's degree of involvement in the activity generating the understatement, the requesting spouse's involvement in business or household finances, and any lavish or unusual expenditures compared with past spending levels. Rev. Proc. 2013-34, § 4.03(2)(c)(iii), 2013-43 I.R.B. at 402.

Petitioner is well educated and worked in a professional capacity as a nurse. When she and intervenor signed and untimely filed the 2010 return, petitioner was aware of numerous issues with their joint returns from prior years. By then, petitioner and intervenor's returns for the 1997–2002 taxable years had been examined, a notice of deficiency had been issued to them, and they had commenced litigation in this Court for those years. Petitioner admits she received the foregoing notice of deficiency. *See Motsko v. Commissioner*, T.C. Memo. 2006-17, slip op. at 9–10 (stating that knowledge at the time of signing return that prior years' returns were being examined and signing of a late-filed return were enough to trigger the "duty of inquiry" because reasonable person would have been alerted to possible problems). This alone would cause a reasonable person to inquire about the accuracy of the 2010 return.

Additionally, most of the adjustments that caused the understatement for 2010 are attributable to petitioner. Nearly 60% of the adjustments for 2010 stem from Form 1099–A issued to petitioner herself. Petitioner testified that she was not involved with the properties and that intervenor maintained control and made all decisions with respect to their management of the properties. The California Superior Court's finding that petitioner owned, controlled, and managed the properties, however, contradicts her testimony and indicates that she had knowledge of and participated in the endeavor.

Petitioner also failed to produce documentary evidence or testimony describing her involvement, or lack thereof, in the Schedule C activity that produced the disallowed deductions. Considering the amount of the disallowed loss deductions in relation to the household's income—which consisted primarily of petitioner's salary—a reasonable person from petitioner's perspective would have been alerted to the potential invalidity of the claimed deductions. Under the foregoing circumstances, petitioner, at minimum, had a duty to inquire further with respect to their 2010 return. Because she failed to discharge this duty, she had reason to know of the items giving rise to the understatement.

**[\*9]**  Knowledge or reason to know may be negated where the requesting spouse establishes that (1) he or she was a victim of abuse and (2) because of that abuse, and for fear of the nonrequesting spouse's retaliation, he or she was unable to challenge the treatment of any items on the joint return or to question the payment of any amount due.  Rev. Proc. 2013-34, § 4.03(2)(c)(i)(A).  Abuse includes efforts to control, isolate, humiliate, and intimidate the requesting spouse or to undermine her ability to reason independently.  *Id.* § 4.03(2)(c)(iv), 2013-43 I.R.B. at 402.  To invoke the abuse exception, the requesting spouse must provide substantiation or specificity regarding the alleged abuse.  *See Johnson*, T.C. Memo. 2014-240, at \*13.

Petitioner's claims of abuse are unpersuasive.  First, she did not allege in her Form 8857 or her Petition that she suffered abuse.  The first indication of her abuse allegation was in the Pretrial Memorandum she filed approximately two years after she filed the Petition in this case.  Second, petitioner testified without providing specific examples that her signatures with respect to the 2010 return were either forged or made under duress and that intervenor made all financial decisions.  At no point throughout this case has she expressed fear of retaliation from intervenor if she were to inquire about their tax compliance.  We have not been provided with evidence necessary to find that the presence of abuse negates her knowledge of the tax items at issue as contemplated by section 4.03(2)(c)(i) of Rev. Proc. 2013-34.  This factor weighs against relief.

### 3.  *Tax Law Compliance*

If a taxpayer is still married to the nonrequesting spouse, whether or not legally separated or living apart, and continues to file joint returns with them after requesting relief, then this factor will be neutral if the returns are in compliance, and weigh against relief if they are not.  *Id.* § 4.03(2)(f)(ii), 2013-43 I.R.B. at 402–03.

After 2010, petitioner and intervenor remained married and continued to file joint tax returns through 2018.  They still have outstanding federal tax liabilities for 2012, 2013, and 2014.  Petitioner claimed "unmarried head of household" status on her 2019 return despite still being married to intervenor, and she has not filed a return for 2020.  This factor weighs against relief.

**[\*10]** II.     *Conclusion*

Upon weighing the facts and circumstances, we find petitioner is not entitled to innocent spouse relief under section 6015(f) for 2010. Her testimony lacked merit, and in the light of her considerable income and assets, knowledge and participation in the items giving rise to the understatement, and consistent record of noncompliance with tax law, we find it would not be inequitable to deny relief.

We have considered all of the parties' arguments and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*