T.C. Memo. 2018-25

UNITED STATES TAX COURT

JEFFREY WILFRED HEEDRAM, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 679-17.                    Filed March 7, 2018.

Jeffrey Wilfred Heedram, pro se.

<u>Adam L. Flick</u>, <u>Stephanie J. Rakoski</u>, and Hannah K. Wikins (specially

recognized), for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  Petitioner seeks review under section 6015(e)(1) of

respondent's determination that he is not entitled to relief from joint and several

liability for taxable year 2014 with respect to unpaid tax of $1,206 that was

[*2] reported on the joint Federal income tax return he filed with Delphia Fegans, his former spouse.[1]

The issue for decision is whether Mr. Heedram is entitled to equitable relief from joint and several liability under section 6015(f).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts are incorporated herein by this reference. Petitioner resided in the State of Texas when he timely filed his petition.

Petitioner, a native of Jamaica, met Ms. Fegans in 2009. They married in 2011 and remained married in 2014. Their divorce became final in October 2015, but they continued to live in the same house for financial reasons until August 2016. The couple filed joint Federal income tax returns for tax years 2012, 2013, and 2014. During their marriage Ms. Fegans was responsible for financial matters, including preparing and filing their joint income tax returns. She had unpaid Federal tax debts before their marriage. She had entered into a payment plan but stopped payment on that plan after only a couple of months.

---

[1] Unless otherwise indicated all section references are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times. Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3]  The couple's 2014 joint Form 1040, U.S. Individual Income Tax Return (joint return), reported total wages of $45,735, total Federal income tax owed of $2,805, tax withheld of $1,599, and tax due of $1,206.  Of the tax liability reported as owed on the joint return, $147 is attributable to petitioner's wages reported on the return (after taking into account withholding credits).  The remaining $1,059 tax liability is attributable to Ms. Fegans' wages.

The Internal Revenue Service (IRS) Wage and Income Transcript for 2014 also shows that petitioner received wages reported on a Form 1099-MISC, Miscellaneous Income, by R.J. Carroll Co. (R.J. Carroll) of $5,631.  These wages were not reported on the joint return.  Petitioner had stopped working for R.J. Carroll in 2013, and the record includes no other evidence to connect petitioner with this income.  Petitioner and Ms. Fegans credibly testified that petitioner did not work for R.J. Carroll in 2014.

Ms. Fegans timely filed their 2014 joint return.  Petitioner reviewed and signed the joint return before it was filed.  He was aware at the time the joint return was filed that they were having difficulty meeting mortgage payments and were seeking relief under the "HARP" program.  He also was aware that the joint return showed tax owed, and he was aware of Ms. Fegans' prior Federal tax debt.  Still, while Ms. Fegans explained the financial difficulties to petitioner, he had

[*4] only a general understanding of the tax issues that the couple faced. And she told him that she would arrange a payment plan for the outstanding tax debt.

In the Agreed Final Decree of Divorce signed October 20, 2015, petitioner and Ms. Fegans agreed that Ms. Fegans would pay "[a]ll federal income taxes, including all penalty and interest, on income taxes due on * * * [Ms. Fegans'] income from and after January 1, 2011." They also agreed that petitioner would pay "[a]ll federal income taxes, including all penalty and interest, on income taxes due on * * * [petitioner's] income from and after January 1, 2011."

On June 17, 2015, respondent's Cincinnati Centralized Innocent Spouse Operation received petitioner's Form 8857, Request for Innocent Spouse Relief, for 2014. On the Form 8857, petitioner indicated that he remained married to, and continued to live with, Ms. Fegans and that the couple was having financial issues because he knew that "[t]here was a challenge paying the monthly mortgage". On October 3, 2016, respondent issued a Final Determination letter denying petitioner innocent spouse relief for tax year 2014 under section 6015(f).

Petitioner is employed currently. He sends approximately $400 per month to his mother, who lives in Jamaica. He is not required to send this amount but does so to support his mother and his two children who live with her. His current

**[\*5]** income generally covers his expenses, including this $400, but does not leave much at the end of each month for him.

OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse generally is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). A requesting spouse, however, may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability under section 6015(c). Sec. 6015(a). If relief is not available under subsection (b) or (c), a requesting spouse may seek equitable relief under subsection (f). Because this case involves failure to pay tax shown on a return, rather than a deficiency, petitioner may be eligible for relief under section 6015(f) only. See Washington v. Commissioner, 120 T.C. 137, 146-147 (2003).

Section 6015(f)(1) gives the Commissioner discretion to grant equitable relief from joint and several liability if, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)".

This Court has jurisdiction to review respondent's denial of petitioner's request for equitable relief under section 6015(f). See sec. 6015(e)(1). In doing

**[*6]** so, we apply a de novo standard of review, as well as a de novo scope of review.  Porter v. Commissioner, 132 T.C. 203, 210 (2009).  Petitioner bears the burden of proving that he is entitled to relief under section 6015(f).  See Rule 142(a); see also Porter v. Commissioner, 132 T.C. at 210.

I.  Threshold Conditions for Granting Relief

The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f) from joint and several liability.  We consult these when reviewing the Commissioner's denial of relief, but we are not bound by them as our analysis and determination ultimately turn on an evaluation of all the facts and circumstances.  Molinet v. Commissioner, T.C. Memo. 2014-109; Sriram v. Commissioner, T.C. Memo. 2012-91; see Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210.

These procedures, set forth in Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399, outline seven threshold conditions that a spouse must meet to qualify for relief under section 6015(f):  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) the relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent

**[\*7]** scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. Respondent does not challenge that petitioner meets the threshold conditions for relief as to the liability associated with Ms. Fegans' income.

As to the liability associated with petitioner's income, we must determine whether any exceptions to the attribution rule apply. Those exceptions are: (a) attribution solely because of the operation of community property law; (b) nominal ownership; (c) misappropriation of funds (the requesting spouse did not know or have reason to know that funds intended for payment of tax were misappropriated by the nonrequesting spouse); (d) abuse before the return was filed that affected the requesting spouse's ability to challenge the treatment of items on the return or question payment of any balance due; and (e) fraud committed by the nonrequesting spouse that is the reason for the erroneous item. Rev. Proc. 2013-34, sec. 4.01(7). The evidence before us does not support application of any of these exceptions. Therefore, we conclude that petitioner is not qualified for relief

**[*8]** as to the $147 attributable to his income. Our analysis below will be limited to the remaining $1,059 attributable to Ms. Fegans' income.

## II. Elements for Streamlined Determination

When the threshold conditions have been met, the guidelines allow a requesting spouse to qualify for a streamlined determination of relief from the IRS under section 6015(f) if all of the following conditions are met: (1) the requesting spouse is divorced from the nonrequesting spouse, is legally separated from the nonrequesting spouse under State law, is a widow or widower and is not an heir to the nonrequesting spouse's estate that would have sufficient assets to pay the tax liability, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date the IRS makes its determination; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) in an underpayment case such as this, the requesting spouse had no knowledge or reason to know when the return was filed that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return. Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400.

We conclude that petitioner fails to qualify for a streamlined determination of relief. Petitioner has not indicated that he will suffer economic hardship if

**[\*9]** relief is not granted, although taking into account his credible testimony we do not think he has significant means to pay the tax liability at issue as we discuss below.

III.  Factors Used To Determine Whether Relief Will Be Granted

Where, as here, a requesting spouse meets the threshold conditions but fails to qualify for relief under the guidelines for a streamlined determination, the requesting spouse still may be eligible for equitable relief if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the underpayment.  See Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400-403.  The following are nonexclusive factors that the Commissioner takes into account when determining whether to grant equitable relief:  (1) marital status; (2) economic hardship; (3) in the case of an underpayment, knowledge or reason to know that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return; (4) legal obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health.  Id.

Respondent argues that petitioner's marital status weighs against relief because petitioner was married to Ms. Fegans at the time he filed the Form 8857, and they continued to live together after their divorce was final.  We disagree.  He credibly testified that they lived together only because of financial issues and they

**[*10]** were divorced and were no longer living together at the time of trial. Because we consider petitioner's eligibility de novo, we consider his marital status at the time of trial. See Wilson v. Commissioner, T.C. Memo. 2010-134, 2010 WL 2465471, at *6, aff'd, 705 F.3d 980 (9th Cir. 2013). Therefore we conclude that this factor favors relief.

Respondent also argues that petitioner will not suffer economic hardship if we deny relief. A requesting spouse suffers economic hardship if the satisfaction of the tax liability, in whole or in part, would cause him to be unable to pay reasonable basic living expenses. See Rev. Proc. 2013-34, sec. 4.03(2)(b). Petitioner bears the burden of proving that he will suffer economic hardship if we do not grant him relief from joint and several liability. See Rule 142(a); Johnson v. Commissioner, T.C. Memo. 2014-240 (explaining that hardship cannot be hypothetical, that the requesting spouse must introduce evidence to support the claim, and that regular income, in addition to savings, available to the requesting spouse supports the conclusion that there would be no economic hardship). We believe petitioner's testimony that he does not have much left at the end of each month after paying his living expenses and sending money to his mother to support her and his two children. Nonetheless, we cannot conclude on the basis of

**[*11]** this testimony alone that he will suffer economic hardship. We treat this factor as neutral.

Respondent relies on petitioner's statements on the Form 8857 to argue that he knew or had reason to know, as of the date the joint return was filed, that Ms. Fegans would not or could not pay the income tax liability. See Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii). Petitioner testified, consistent with the statements on that form, that he knew about the difficulty paying the mortgage. He also testified that he knew the tax liability would not be paid when the joint return was filed. However, he also credibly testified that he believed Ms. Fegans would set up another payment plan. His testimony was supported by that of Ms. Fegans. She explained that he was not sophisticated regarding financial matters or the tax liability that the couple faced on the 2014 joint return.

We have held consistently that a requesting spouse carries his burden of proof to establish that he reasonably believed his spouse would pay an outstanding liability where the requesting spouse is not involved in the family finances or sophisticated about them and the nonrequesting spouse has the income to make the payments. See Torrisi v. Commissioner, T.C. Memo. 2011-235 (holding that the requesting spouse's belief that the nonrequesting spouse would pay the tax liability was reasonable when the nonrequesting spouse's business was generating

[*12] substantial income, the requesting spouse did not assist the nonrequesting spouse in paying all bills, and the nonrequesting spouse asked the requesting spouse to make a check payable to the IRS for a specific amount that was less than the total amount due); see also Waldron v. Commissioner, T.C. Memo. 2011-288 (holding that the requesting spouse reasonably believed the nonrequesting spouse would pay a portion of the unpaid tax liabilities at the time the return was signed because the nonrequesting spouse had made his share of monthly payments for the initial three years on an installment agreement entered into near the time the joint return was signed).

Conversely, we have concluded that a requesting spouse had reason to know that the nonrequesting spouse would not pay when the requesting spouse handled the finances and the nonrequesting spouse lacked financial means. See Cutler v. Commissioner, T.C. Memo. 2013-119 (holding that the requesting spouse knew that the nonrequesting spouse found financial matters unpleasant and refused to deal with them and therefore the requesting spouse knew she had to prepare the returns and could not reasonably expect the nonrequesting spouse to pay the tax); Yosinski v. Commissioner, T.C. Memo. 2012-195 (holding it was not reasonable to believe the nonrequesting spouse would pay the tax when the nonrequesting spouse had no source of substantial income and the record did not indicate the

[*13] nonrequesting spouse had any assets of substantial value in her own name); Stolkin v. Commissioner, T.C. Memo. 2008-211 (holding that the requesting spouse's knowledge of the couple's financial difficulties deprives the requesting spouse of reason to believe that the nonrequesting spouse will pay the tax liability). We conclude on this record that petitioner has established that he reasonably expected Ms. Fegans to pay the tax liability reported on the joint return. She earned most of the wages in the year before us and handled the finances for the couple. Therefore, this factor weighs in favor of relief.

Respondent concedes that under the final divorce decree Ms. Fegans bears the legal obligation to pay the Federal income tax owed on her income but argues that this factor is neutral because petitioner "clearly knew" at the time he entered into the divorce decree that Ms. Fegans could not pay the outstanding liability. But we have found above that petitioner reasonably believed, on the basis of his limited understanding of Ms. Fegans' financial situation, that she would set up a new payment plan. We conclude, therefore, that this factor favors relief.

Respondent concedes that neither petitioner nor Ms. Fegans received a significant benefit from the unpaid income tax liability. This factor therefore favors relief.

**[*14]** Finally, respondent argues that petitioner was not in compliance with the tax laws because of the failure to include the income reported as paid to petitioner by R.J. Carroll for 2014. Section 6201(d) shifts to the Commissioner the burden to produce evidence, other than an information return, connecting income with the taxpayer where the taxpayer has asserted a reasonable dispute with regard to income reported on the information return and has cooperated fully with the Commissioner. Respondent provided no evidence as to petitioner's cooperation or lack thereof and concedes that we do not have jurisdiction over any resulting deficiency from the inclusion of this income on the joint return. We do not think it reasonable to conclude that petitioner was not in compliance where he and Ms. Fegans both credibly testified that he did not work for R.J. Carroll in 2014 and respondent offered no other evidence to connect him with this income. We conclude therefore that this factor is neutral.

Lastly, the parties did not raise, nor have we identified in the record, any mental or physical health problems. Therefore, this factor also is neutral.

All of the factors either favor relief or are neutral. We also conclude that it would be inequitable to hold petitioner liable for the tax liability associated with Ms. Fegans' income because of the relative financial positions and sophistication of Ms. Fegans and petitioner in their marriage. Therefore, we will grant petitioner

**[*15]** relief from joint and several liability under section 6015(f) for the tax associated with Ms. Fegans' income.

## Conclusion

We sustain respondent's determination that petitioner is not entitled to relief from joint and several liability for taxable year 2014 with respect to the $147 of unpaid Federal income tax attributable to his income. We also hold that petitioner is entitled to relief from joint and several liability for the remaining $1,059 attributable to Ms. Fegans' income.

We have considered all arguments made and facts presented in reaching our decision and, to the extent not discussed above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.